Gregory CHAMBERS, Appellee,

v.

Larry R. DILLOW, et al., Appellants.

Supreme Court of Tennessee,
at Knoxville.

July 21, 1986.

Thomas C. McKee, H. Wayne Graves,
Johnson City, John S. McLellan, Kingsport,
for appellants.

Judith Fain, Erwin, for appellee.

## OPINION

FONES, Justice.

This is an action against a lawyer and his law firm for malpractice.

Defendant was employed to sue Washington County for damages to plaintiff's realty inflicted in the course of paving and repairing an adjacent roadway. The acts of malpractice alleged were (1) failure to include in the suit filed 28 March 1980 a cause of action for inverse condemnation; (2) allowing that suit to be dismissed on 18 March 1981 for failure to prosecute; and (3) intentionally concealing the dismissal of the suit against Washington County for approximately one year.

The trial judge held that the Washington County case was irremediable more than one year before this suit was filed. The Court of Appeals reversed, holding that although the suit was brought more than one year [1] after plaintiff learned that he had a cause of action, the running of the statute was tolled by plaintiff's efforts to revive the suit against Washington County, pursued by other counsel after asserting plaintiff's malpractice claim against de-

1. This malpractice action was filed on 19 October 1983.

fendants. We disagree, reverse and dismiss.

In March 1980 plaintiff employed defendant law firm to pursue his claim against Washington County and was referred to Thomas Frost. Suit was promptly filed asserting negligence of the county under the Tennessee Governmental Tort Liability Act as the sole cause of action. According to the complaint in this suit, which must be taken as true, the trial judge entered an Order To Prosecute, sua sponte on 17 November 1980, a copy of which was mailed to Frost. On 11 December 1980, the trial judge dismissed the case by docket entry, but an Order of Dismissal was not entered until 18 March 1981. A copy of that order was sent to Frost.

According to plaintiff's affidavit, he had sought to employ Larry Dillow and was assured that he would participate in the trial; he called many times to inquire about the progress of his suit, but Frost was never in and he would talk to Dillow, always receiving assurances that all was well with his case, until March 1982, when he was informed that his suit against Washington County had been dismissed.

Plaintiff employed J. Christopher Booth, a Kingsport attorney, who asserted plaintiff's malpractice claim by letter dated 22 March 1982 to Frost. On 12 April 1982, Booth wrote to Frost's lawyer asserting Frost's negligence in failing to include a cause of action for inverse condemnation pursuant to T.C.A. § 29–16–123 and a claim of fraudulent concealment of the dismissal of his case for approximately one year. That letter included the following sentences:

> From our viewpoint, the case was essentially decided for the defendant March 18, 1981 (T.R.C.P. 41.02(3).) I have researched some cases concerning this matter and have found that they fortify our viewpoint.

However, in spite of his firmly expressed belief that the dismissal operated as an "adjudication upon the merits",[2] Booth

filed a motion on 26 May 1982 under T.R.C.P. 60.02 to set aside the Order of Dismissal entered more than a year before. On 28 June 1982 a trial judge other than the one who signed all other orders relevant to this case, granted the motion, restored the case to the docket, and allowed plaintiff thirty days to amend his complaint. Plaintiff amended by alleging a cause of action for inverse condemnation. An order of voluntary non-suit of his governmental tort liability action was entered, expressly reserving his inverse condemnation claim.

Washington County filed a plea asserting that the suit was not filed within one year of the taking and was thus barred by the statute of limitations relating to inverse condemnation actions. The trial judge sustained that plea and dismissed plaintiff's suit, for the second time, on 18 April 1983.

Plaintiff filed this malpractice action on 19 October 1983 against Frost and the Dillow law firm. Defendants pled the bar of the one year statute of limitations and moved for summary judgment. The trial judge, relying upon *Banton v. Marks,* 623 S.W.2d 113 (Tenn.App.1981) and *Ameraccount Club Inc. v. Hill,* 617 S.W.2d 876 (Tenn.1981) held that "only matters of law are in question, further, at all pertinent times the alleged negligence of defendants was irremediable relative to any claim of malpractice for more than one year prior to the filing of this cause of action." Since the malpractice action was filed within one year of the second dismissal of plaintiff's suit against Washington County, that opinion, necessarily, was based upon a finding that plaintiff's action against the county was irremediable as a result of the first dismissal on 18 March 1981.

The Court of Appeals held that, "[a]lthough the statute of limitations had begun to run in March of 1982 (when the plaintiff learned of Frost's negligence) the subsequent reinstatement of his cause of action against Washington County served to toll the running of the statute until April 18, 1983...." The intermediate court found that even if the trial court's action

2. Tennessee Rules of Civil Procedure 41.02(3).

was erroneous in setting aside the first dismissal on a Rule 60.02(1) motion, that plaintiff's suit against the county was not irremediable until the second dismissal.

In *Ameraccount Club Inc. v. Hill, supra,* we held that a cause of action against an attorney for malpractice does not accrue until the date that the negligence becomes irremediable. That case involved negligence in the handling of an administrative proceeding. The client promptly learned that their lawyer's incomplete application to the patent office had resulted in a Florida applicant obtaining a prior filing date for the same service mark and logo. However, that negligent act did not result in injury until the Florida application, "mature[d] into a registration" and a final decision by the patent office that the Tennessee Ameraccount service mark and logo could not be registered. We held that although the malpractice suit was brought more than a year after the discovery of the lawyer's incomplete application and its probable consequences, that the "injury" was not sustained until the proceeding in the U.S. Patent Office was finally determined and thus became irremediable.

■ An examination of what occurred in this case requires a finding, as a matter of law, that Frost's negligence, resulting in the dismissal of Chambers' suit against the county, became irremediable on 18 March 1981, the date of the first dismissal order. That dismissal was involuntary, for failure to prosecute and was clearly, "an adjudication upon the merits," pursuant to T.R.C.P. 41.02(3). The Rule 60 motion filed by Chambers' new lawyer, Booth, is not in this record, but the known circumstances of Frost's failure to appear in court and failure to be available to his client point unerringly to the single possible ground of relief, excusable neglect. That ground is not available under the rule, after the expiration of one year from the entry of the judgment from which relief is sought. The Rule 60 motion was filed by Booth more than one year after the first dismissal order.

The Court of Appeals rejected defendants' argument that the order granting plaintiff relief under Rule 60 was void, relying upon a quote from 46 Am.Jur.2d Judgments § 33. The principles stated there apply only to final judgments that are, "unreversed and unvacated." The action of the trial court under examination here was not a final judgment and was later reversed by the same court that rendered it. On the question of when Frost's negligence became irremediable, we think it is immaterial whether the trial court's action in setting aside the first dismissal under Rule 60 was void or merely erroneous as a matter of law. The trial court, in effect, reversed and vacated its Rule 60 action by dismissing the suit against the county on 18 April 1983. In dismissing this malpractice suit the trial court necessarily held that the plaintiff's action against the county became irremediable as a result of the first dismissal on 18 March 1981, further affirming the reversal of the Rule 60 action.

■ We reject the notion advanced by the Court of Appeals that a legal error by a trial court later vacated, which merely delays the final disposition of a lawsuit, will defer the irremediable injury sustained by the client of a negligent lawyer. Where as here the client has knowledge of the lawyer's negligence, of the termination of his lawsuit, of the legal consequences of that termination, and has employed another lawyer to prosecute his malpractice claim, he cannot defer the irremediable injury date by futile efforts to revive a legally dismissed lawsuit.

■ There is an additional reason why plaintiff's cause of action for malpractice accrued in March 1982. Assuming that the full extent of his damages were not ascertainable at that time, we have held that a plaintiff cannot be permitted to wait until he knows all of the injurious effects as consequences of an actionable wrong. *Security Bank and Trust Co. v. Fabricating Inc.,* 673 S.W.2d 860 (Tenn.1983), *Taylor v. Clayton Mobile Homes Inc.,* 516 S.W.2d 72 (Tenn.1974). Plaintiff was liable for the

court costs of his dismissed lawsuit, he had suffered a lengthy delay in the progress of his case, even if it be assumed it was subject to revival, and at a minimum had lost the interest on the use of an anticipated money recovery. Also he was immediately faced with the necessity to incur additional attorney's fees, all as a direct result of Frost's negligence. Those damages, which had matured in March 1982, together with his full knowledge of Frost's negligence, were sufficient *injury* to trigger the accrual of plaintiff's cause of action without regard to whether or not the Washington County lawsuit had reached the irremediable stage.

The judgment of the Court of Appeals is reversed and this suit is dismissed. Costs are adjudged against plaintiff.

BROCK, C.J., and COOPER, HARBISON, DROWOTA, JJ., concur.