Thomas M. BATCHELOR, et al., Plaintiffs/Appellees,

v.

HEISKELL, DONELSON, BEARMAN, ADAMS, WILLIAMS & KIRSCH, P.C., Defendants/Appellants.

Court of Appeals of Tennessee, Western Section, at Jackson.

July 17, 1991.

Application for Permission to Appeal Denied by Supreme Court Jan. 6, 1992.

Motion for Reconsideration Denied Feb. 24, 1992.

Mary L. Wolff, Robert M. Johnson, Daniel K. Evans, Wolf & Ardis, Memphis, for plaintiffs/appellees.

Tim Edwards, Lucinda S. Murray, Glassman, Jeter, Edwards and Wade, Memphis, for defendants/appellants.

FARMER, Judge.

This is an action for legal malpractice. The defendants, Heiskell, Donelson, Bearman, Adams, Williams and Kirsch, et al. (hereinafter "Heiskell," "Heiskell Donelson" or "Defendants"), moved for summary judgment contending that the action was barred by the applicable statute of limitations. The trial court denied Defendants' summary judgment motion.

In June 1974 Hamilton Bancshares, Inc. merged with First American Bank. In October of 1975 the plaintiffs,[1] former share-

1. The plaintiffs herein are Thomas M. Batche- lor, William Felt, Seymour Gilman, Jimmy

holders of First American, retained Heiskell Donelson to rescind the merger between Hamilton Bancshares and First American. In the alternative, the plaintiffs sought damages due to fraudulent misrepresentations made by Hamilton Bancshares and its directors and officers during merger negotiations. These misrepresentations included, among other things, representations made in a Hamilton Bancshares registration statement. The present action arises out of Heiskell Donelson's handling of the plaintiffs' claim against Hamilton Bancshares and its directors. Basically, the plaintiffs are alleging that Defendants breached a duty in that they (1) failed to refile a complaint against a number of Hamilton Bancshares directors after it was dismissed for insufficiency of process (2) failed to timely sue Money Center banks, and (3) failed to file a claim in Hamilton Bancshares' bankruptcy proceeding. The facts in this case are essentially uncontroverted. The following table depicts a chronological synopsis of the events that gave rise to this litigation.

### I. Dismissal of Hamilton Bancshares' Directors

1. *November 14, 1975:* Heiskell Donelson filed a complaint[2] in the United States Western District Court against Hamilton Bancshares and its 17 directors (hereinafter "Western District defendants") on behalf of the plaintiffs.[3] Heiskell Donelson directed service of the complaint on T.W. Holliday as "attorney in fact" for all the named defendants.

2. *December 29, 1975:* A motion to dismiss for insufficiency of service was filed by 14 of the 17 individual defendants. The defendants alleged that they did not appoint T.W. Holliday as their agent for service of process.

3. *December 30, 1975:* A consent order was entered dismissing the defendant, D.B. Harris, Jr., who had deceased.

4. *January 19, 1976:* A fifteenth individual defendant filed a motion to dismiss for insufficiency of service.

5. *February 10, 1976:* The defendant consented to the dismissal of the November 14 complaint as to the 14 individual directors/defendants.

6. *February 11, 1976:* The court dismissed the complaint as to the fifteenth individual defendant.

7. *February 15, 1976:* An order was entered by the Western District Court dismissing the November 14 complaint as to the 15 individual defendants. The only remaining defendants were Holliday and Bancshares.

8. *February 25, 1976:* Heiskell Donelson reissued summonses for ten of the previously dismissed Western District defendants. The dismissed complaint, however, was not refiled. In addition, service of process was obtained against two additional defendants, David Hamilton and Carmack Cochran. This service was also ineffective because Heiskell Donelson neglected to file a complaint against the additional defendants.

9. *March 26, 1976:* Heiskell Donelson consented to an order in the Hamilton Bancshares' bankruptcy enjoining the plaintiffs from prosecuting the action. The lawsuit thereafter lay dormant for approximately three years.

10. *June 29, 1978:* Heiskell Donelson withdrew as plaintiffs' counsel of record due to a potential conflict of

Payne, Virginia G. O'Hara, as executrix of the estate of Harry E. O'Hara, and Carl Olsen, as successor administrator CTA of the estate of Howard Sowell.

**2.** The complaint alleged that Defendants had violated §§ 11 and 12 of the Federal Securities Act of 1933, § 10(b) of the Federal Exchange Act, Rule 10 B–5 of the Federal Exchange Act of 1934, § 17 of the Securities Act, and that Hamilton Bancshares had breached the merger agreement.

**3.** The original complaint named Bancshares and the following directors as defendants in the original action: (1) J.E. Whitaker, (2) J. Vorder Bruegge, (3) T.W. Holliday, (4) W.M. Finley, (5) J.L. Hutcheson, Jr., (6) H.C.E. Johnson, (7) W.H. Lancaster, Jr., (8) W.D. Moon, Jr., (9) Z.C. Patten, (10) J.P. Smartt, (11) B. Smith, Jr., (12) R.C. Thatcher, Jr., (13) N.R. Youmans, (14) P.S. Barrett, (15) T.R. Preston, III, (16) D.B. Harris, Jr., and (17) W.R. Myers.

interest. The law firm of Krivcher & Magids replaced Heiskell.

11. *May 27, 1980:* Krivcher & Magids moved for leave of court to file an amended complaint adding the two omitted defendants, Hamilton and Cochran.

12. *July 7, 1980:* The Western District Court allowed the plaintiffs' amendment.

13. *July 17, 1980:* Krivcher & Magids wrote a letter[4] to Heiskell Donelson indicating their concern over the "defect" in service upon the Western District defendants.

14. *August, 1980:* The Western District defendants filed motions to dismiss. They alleged that the action had been improperly commenced against them and that it was presently time barred. Hamilton and Cochran insisted that the action was barred by the statute of limitations.

15. *December 4, 1984:* Heiskell Donelson executed a tolling agreement in which they agreed "not to plead the statute of limitations as a defense to any action brought by any former shareholder of First American Bank of Memphis arising from former representation by Heiskell, Donelson, Adams, Williams & Kirsch of such persons." The term of the agreement was "one year following the termination of litigation presently pending in the U.S. District Court...."

16. *May 29, 1985:* Judge Wellford granted the motions to dismiss as to all defendants in the Western District cause except Hamilton Bancshares and T.W. Holliday.

17. *February 26, 1988:* Plaintiffs settled their claim against T.W. Holliday.

18. *March 11, 1988:* The court granted summary judgment against Hamilton Bancshares in favor of the plaintiffs therein.[5]

The U.S. District Court awarded plaintiffs judgments in the following amounts:

| Thomas Batchelor | $ 203,873.00 |
| William Felt | $ 369,549.00 |
| Seymour Gilman | $ 505,087.00 |
| Virginia G. O'Hara | $ 215,089.00 |
| Howard Sowell | $ 895,777.00 |
| Jimmy Payne | $1,033,812.00 |

These judgments were virtually worthless, however, because Hamilton Bancshares' assets had been distributed by the bankruptcy court.

## II. Money Center Banks

1. *March 26, 1976:* Heiskell Donelson delivered an amended and supplemental complaint to the United States District Court Clerk. The amended complaint alleged that Money Center Banks[6] conspired with Hamilton Trust of Memphis and its trustees, Mark Vorder Bruegge and Jake Butcher, to transfer the assets of First American to Hamilton Trust of Memphis on February 18, 1976. Heiskell Donelson never requested a hearing on this motion to

---

4. The letter is set forth hereinafter at page 394 of this Opinion.

5. In granting the summary judgment the court found:

1. That the registration statement filed by Hamilton Bancshares, Inc. covering the shares of its common stock to be issued to First American Bank shareholders in connection with the subject merger and the proxy statement issued to the shareholders of First American Bank in connection with the merger contained untrue statements of material facts and omitted to state material facts necessary in order to make the statements contained therein in light of the circumstances under which they were made not misleading.
2. That Hamilton Bancshares, Inc. violated the provisions of Section 11, 12, and 17 of the

Securities Act of 1933, and that as a proximate result of such violations, the Plaintiffs were damaged.
3. That Hamilton Bancshares, Inc. breached the representations and warranties contained in the Merger Agreement respecting the financial condition of Hamilton Bancshares, Inc. and otherwise and further, that a precondition to the effectuation of the merger to the effect that "there being no material adverse changes in the financial condition, assets, liabilities, operation or business" of Hamilton Bancshares, Inc. was not satisfied.

6. The following entities are collectively referred to herein as "Money Center Banks": (1) Manufacturers Hanover Trust Company, Morgan Guaranty Trust, Chemical Bank, Banker's Trust Company, First National City Bank, and Western American Bank, Ltd.

amend and the amendment was never granted.

2. *February 14, 1979:* The district court ruled that the "Amended and Supplemental Complaint" never became effective because "it was filed without the consent of adverse parties and without leave of court."

3. *February 15, 1979:* Krivcher & Magids filed suit in chancery court against Money Center Banks.

4. *September 10, 1981:* The chancery court dismissed the action on the ground that it was barred by the applicable statute of limitations. Thereafter the Court of Appeals reversed.

5. *December 19, 1983:* The Tennessee Supreme Court dismissed plaintiffs' claim against Money Center Banks.

### III. Bankruptcy Proceedings

1. *February 20, 1976:* Hamilton Bancshares filed a voluntary bankruptcy. Heiskell Donelson did not file a claim on behalf of the plaintiffs in the Hamilton Bancshares bankruptcy, nor did they challenge the preferential transfer of assets of Hamilton First American to Hamilton Trust of Memphis.

2. *July 17, 1976:* Hamilton Bancshares' debts were discharged. Subsequently, the assets of Hamilton Bancshares' bankruptcy estate were disbursed. As a direct result thereof, the district court judgment ultimately rendered in favor of the plaintiffs was worthless.

3. *July 30, 1981:* Samuel Mayes, Jr., of Heiskell Donelson and plaintiffs' successor counsel discussed Heiskell Donelson's failure to file a claim in the Hamilton Bancshares bankruptcy.

4. *January 26, 1982:* Samuel Mayes, Jr. again discussed defendant's failure to file the bankruptcy claim.

As we have noted, on December 4, 1984 Heiskell Donelson entered into an agreement with the plaintiffs which provided:

Certain disputes have arisen regarding the prior representation by Heiskell, Donelson, Adams, Williams & Kirsch of the former shareholders of First American Bank of Memphis. In order to allow the parties to fully evaluate this matter and to allow additional time to attempt to amicably resolve any such disputes, Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, on behalf of itself, its predecessor, Heiskell, Donelson, Adams, Williams & Kirsch, its partners and associates, promises and agrees not to plead the statute of limitations as a defense to any action brought by any former shareholder of First American Bank of Memphis arising from the former representation by Heiskell, Donelson, Adams, Williams & Kirsch of such persons. *The waiver and agreement does not apply to any action now time barred.*

The foregoing waiver and agreement not to assert the statute of limitations shall be effective with respect to any action commenced prior to the effective date of revocation hereof as hereinafter provided. The foregoing waiver and agreement not to assert the statute of limitations shall expire one year following the termination of litigation presently pending in the U.S. District Court for the Western District of Tennessee, Cause No. 75–511, or may be revoked at any time following the termination of said Cause No. 75–511, provided that such revocation shall not be effective until one hundred twenty (120) days following written receipt by you of notice of revocation, which notice shall be sent by certified mail, return receipt requested. Nothing contained herein shall be interpreted as affecting the rights of the former shareholders of First American Bank of Memphis to commence legal action prior to the termination of the pending litigation in the U.S. District Court for the Western District of Tennessee, Cause No. 75–511, or otherwise. (Emphasis added)

The United States District Court granted summary judgment against Hamilton Bancshares in favor of the plaintiffs in the amount of $3,200,000 on March 11, 1988. This judgment, however, is unrecoverable due to Hamilton Bancshares' financial status. On January 25, 1989, plaintiffs filed the present action. Heiskell Donelson

moved for summary judgment alleging that the plaintiffs' cause of action was barred by the statute of limitations. Heiskell Donelson insists that each action was already time barred when the tolling agreement was entered into between the parties. The trial court denied the defendant's motion and an interlocutory appeal was granted. The sole issue for our determination as set forth by the appellant is:

Did the trial court err in denying the defendants' motion for summary judgment, which was brought on the ground that this legal malpractice action is barred by the one-year statute of limitations provided by T.C.A. § 28-3-104?

■ In weighing a summary judgment this Court will review all of the evidence and pleadings in a light most favorable to the opponent of the motion, *Cawood v. Davis,* 680 S.W.2d 795 (Tenn.Ct.App.1984), and any legitimate factual conclusions that arise therefrom will be drawn in the opponent's favor. *Union Planters Corp. v. Peat, Marwick, Mitchell & Co.,* 733 S.W.2d 509 (Tenn.Ct.App.1987). It is with the foregoing standard in mind that we now review the pertinent facts of this case.

As we have mentioned the plaintiffs' allegations basically fall into three categories:

(I) Heiskell Donelson's failure to perfect service on a number of Hamilton Bancshares directors and their failure to timely sue others.

(II) Heiskell Donelson's failure to timely sue Money Center Banks.

(III) Heiskell Donelson's failure to file a claim in the Hamilton Bancshares' bankruptcy proceeding.

We will analyze the statute of limitations as it pertains to each of the plaintiff's allegations of negligence.

I.

*Improper Service.*

■ The statute of limitations which applies to legal malpractice actions is set forth in T.C.A. § 28-3-104 which provides in pertinent part:

**Personal tort actions [Variable effective dates].**

—(a) The following actions shall be commenced within one (1) year after the cause of action accrued:

(1) Actions for libel, for injuries to the person, false imprisonment, malicious prosecution, breach of marriage promise;

(2) Actions and suits against attorneys or licensed public accountants or certified public accountants for malpractice, whether the actions are grounded or based in contract or tort....

The Tennessee Supreme Court has stated that a cause of action for legal malpractice accrues "as of the date on which the negligence [becomes] irremediable," *Ameraccount Club, Inc. v. Hill,* 617 S.W.2d 876, 879 (Tenn.1981), *quoting Chamberlin v. Smith,* 72 Cal.App.3d 835, 140 Cal.Rptr. 493 (1977), and when the plaintiff discovers "or in the exercise of reasonable care and diligence ... should have discovered the resulting injury." *Teeters v. Currey,* 518 S.W.2d 512, 517 (Tenn.1974).

The Western District defendants were dismissed for insufficiency of service on February 10, 1976 and February 11, 1976. On February 25, 1976, Heiskell Donelson re-issued summonses for ten of the dismissed defendants and two additional defendants.

However, Heiskell Donelson did not re-file the dismissed complaint against these defendants. As a result the service was fatally defective. Since the Western District defendants were never effectively served, Heiskell Donelson's negligence actually became irremediable when the statute of limitations ran as to the plaintiffs' causes of action against the named defendants. The claims asserted by the plaintiffs in the Western Section action arose under Sections 11, 12 and 17 of the Securities Act of 1933 (15 U.S.C. §§ 77k, 77l, 77q(a)), Section 10(b) of the Securities Act of 1934 (15 U.S.C. § 78j(b)) and Rule 10B–5 promulgated thereunder. As noted by the United States District Court in its May 29, 1985 order dismissing the Western District defendants, "[a]ctions brought pursuant to sections 11 and 12(2) of the Securities Act of 1933, 15 U.S.C. §§ 77(b) and (1), are governed by the statute of limitations

found in 15 U.S.C. § 77(m), which specifies that these actions must be brought within one year after the discovery of the alleged violation." Without belaboring when the statute of limitations actually began to run in that cause it is evident that it began to run sometime prior to November 14, 1975 (the plaintiffs' filing of the original complaint in the district court). Furthermore, "[a]ctions brought pursuant to section 17 of the Securities Act of 1933, 15 U.S.C. § 17(q), and section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78(j), are governed by applicable state statutes of limitations.... Tenn.Code Ann. § 48–2–122(h) provides for at most a two year limitations period...." In either case it is clear that the plaintiffs' causes of action were time barred well before December 4, 1983.

Furthermore, it is clear that the plaintiffs actually knew that this defect was irremediable on July 17, 1980. On this date the plaintiffs' successor law firm wrote a letter to Heiskell Donelson expressing their concern over this blatant defect. Specifically the letter stated:

I appreciate your meeting with me to discuss the defect in the commencement of the lawsuit captioned above against certain individual defendants named therein. I have left with you a copy of the docket sheet, as well as the Motion and Memorandum which Burch, Porter & Johnson intends to file in the matter on July 25, 1980. Of course, I will be happy to furnish you any other information which you need.

At the meeting, we agreed that you would consider the alternative responses to the position which Burch, Porter & Johnson intends to take. I am willing to advance any reasonable argument in response to the position of Burch, Porter & Johnson. We have agreed to talk again on Tuesday, July 22, 1980.

If, however, you conclude that no response is available to the position of Burch, Porter & Johnson, I suggest that I promptly initiate settlement negotiations so as to reduce the potential losses arising from this defect. It is imperative in my judgment that any such settlement

negotiations be consummated so as to preclude the filing of the Motion and Memorandum by Burch, Porter & Johnson. As I mentioned to you in the office, upon the filing of this Memorandum and Motion, the defect shall be called to the attention of all other defendants, in which event, the litigation would be seriously jeopardized.

Mr. Samuel Mays, Jr., a shareholder in the defendant law firm and familiar with the case herein, stated in an affidavit that this July 17, 1980 letter was specifically addressing the defect in the commencement of the Western District law suit. Furthermore, he stated that the substance of the letter was discussing the fact that a number of the defendants in that cause were about to file motions to dismiss. It is apparent from this letter that the plaintiffs were aware that the defendant's actions were irremediable and that losses were bound to ensue.

■ While there is some controversy whether the successor attorney's knowledge was imputed to the plaintiffs, it is well settled law in this state that clients are charged with the knowledge of their attorneys under an agency theory. "Counsel's knowledge must be attributed to his client, if the actions of the court are to have any efficacy." *Winstead v. First Tennessee Bank, N.A., Memphis,* 709 S.W.2d 627, 632 (Tenn.Ct.App.1986), *quoting Moody v. Moody,* 681 S.W.2d 545, 546 (Tenn.1984).

Plaintiffs insist that this action could not have accrued prior to May 29, 1985 when the district court granted the Western District defendants' motions to dismiss. Under the plaintiffs' analysis the present cause of action would be well within the terms of the tolling agreement; nevertheless, we must disagree with the plaintiffs' position. These Western District defendants' motions to dismiss were filed in response to Krivcher & Magids' attempt to reinstate this fatal action. It was obvious from the onset that their efforts were futile at best. The plaintiffs clearly had no basis for reinstatement at this time. The futility of the plaintiffs' efforts to revive

this action is not only evident in their letter dated July 17, 1980, but also in the district court's ruling on this matter on May 30, 1985. Specifically the district court held that:

As an initial matter, the Court addresses plaintiffs' request to modify its February 10 and 11, 1976, orders dismissing the lawsuit against various individual defendants. Plaintiffs suggest that many of the procedural problems present in the lawsuit would equitably be solved by the Court's modification of these orders from orders of dismissal to orders merely quashing service of process. Under Fed. R.Civ.P. 54(b), this Court may amend any interlocutory order at any time before entry of judgment that adjudicates all claims of all parties. The Court, however, find [sic] inappropriate and inequitable any modification of the February 10, 1976, consent order, which dismissed the complaint with respect to all defendants except Bancshares, Holliday, and Youmans. Likewise, the Court finds inappropriate and inequitable any modification of the February 11, 1976 order dismissing the complaint against Youmans. While this latter order was not a consent order, it was specifically approved for entry by plaintiffs' original counsel, who never claimed error in its entry.

If the order of dismissal should have instead merely quashed the ineffectual summons, plaintiffs had a number of avenues available to them to contest the form and/or effect of that order. Instead, they consented to or approved entry of such order.

For instance, plaintiffs (1) could have requested that the Court merely quash service of process rather than enter orders of dismissal. See *Stern v. Beer*, 200 F.2d 794, 795 (6th Cir.1952); (2) they could have promptly moved for leave to file an amended complaint renaming the dismissed defendants; (3) they could have timely moved for reconsideration of the Order of Dismissal; or, (4) they could have timely moved for certification of an interlocutory appeal, or filed a notice of appeal, and have addressed their concerns to the Sixth Circuit Court of Appeals. See *Robinson v. Federal National Mortgage Association*, 673 F.2d 1247, 1249 (11th Cir.1982).

Plaintiffs, of course, utilized none of these (or other) avenues for relief, but now claim the Court should cure this oversight and grant their motion for an order *nunc pro tunc* changing the effect of an order entered long ago. This the Court declines to do. Accordingly, plaintiffs' motion for an order *nunc pro tunc* is DENIED.

Plaintiffs also moved for leave to file an amended complaint pursuant to Rule 15(a). Plaintiffs claim that this amended complaint should relate back to their original complaint pursuant to Rule 5(c). Rule 5(a) specifies that after twenty days have passed since the filing of the initial pleading "a party may amend his pleading only by leave of court or written consent of the adverse party; and leave shall be freely given where justice so requires." Plaintiffs filed their motion for leave to amend on August 30, 1984, almost nine years after the original complaint was filed. Justice does not require forcing defendants to defend so stale a claim. See, e.g., *Nilsen v. City of Moss Point*, 621 F.2d 117 (5th Cir.1980). Accordingly, plaintiffs' motion for leave to amend is DENIED.

Since plaintiffs have failed to file a complaint against defendants Whitaker, Vorder Bruegge, Finley, Hutcheson, Johnson, Lancaster, Moon, Patten, Smartt, Thatcher, Youmans, Barrett, Preston, and Meyers, these defendants' motions to dismiss are GRANTED. See, e.g., *Phillips v. Murchison*, 194 F.Supp. 620 (S.D.N.Y.1961); see also *International Controls Corp. v. Vesco*, 556 F.2d 665, 668–69 (2d Cir.1977).

As the Supreme Court stated in *Chambers v. Dillow*, the plaintiff "cannot defer the irremediable injury date by futile efforts to revive a legally dismissed lawsuit." 713 S.W.2d 896, 898 (Tenn.1986).

*Dillow* involved a legal malpractice action in which the plaintiff had retained the defendant, Larry Dillow and/or Thomas Frost, to sue Washington County for dam-

ages to the plaintiff's realty. The defendant law firm therein filed a suit on behalf of the plaintiff, Gregory Chambers, on March 28, 1980. Thereafter, however, the defendant, among other things, allowed the suit to be dismissed in March of 1981 for failure to prosecute. Subsequently, Chambers employed attorney Christopher Booth. Booth wrote to the defendants on April 12, 1982 stating that,

> From our viewpoint, the case was essentially decided for the defendant March 18, 1981 (T.R.C.P. 41.02(3).) I have researched some cases concerning this matter and have found that they fortify our viewpoint.

*Id.* at 897. On May 26, 1982, Booth filed a motion pursuant to T.R.C.P. 60.02 to set aside the order of dismissal. The motion was granted. The court ultimately dismissed the action against Washington County on April 18, 1983 on the basis that the suit was time barred by a one-year statute of limitations.

Chambers filed a malpractice action against Dillows and Frost on October 19, 1983. The defendants plead the statute of limitations as a time bar. The Court of Appeals held that " '[a]lthough the statute of limitations had began to run in March of 1982 (when the plaintiff learned of Frost's negligence) the subsequent reinstatement of his cause of action against Washington County served to toll the running of the statute until April 18, 1983....' " *Id.* at 897. Furthermore, this Court held that "even if the trial court's action was erroneous in setting aside the first dismissal on a Rule 60.02(1) motion, that plaintiff's suit against the county was not irremediable until the second dismissal." *Id.* at 897–898. The Tennessee Supreme Court reversed on appeal and held that the plaintiff's malpractice action began to accrue on March 18, 1981, the first dismissal. The court reasoned that the trial court essentially vacated its Rule 60 ruling when it dismissed the Washington County action on April 18, 1983. It was clear from the record that the plaintiff's Rule 60 motion had been futilely filed and erroneously granted. The Supreme Court rejected the "notion advanced by the Court of Appeals that a legal error

by a trial court later vacated, which merely delays the final disposition of a lawsuit, will defer irremediable injury.... [H]e cannot defer the irremediable injury date by futile efforts to revive a legally dismissed lawsuit." *Id.* at 898.

■ Regardless of when the plaintiffs in this case should have reasonably discovered their resulting injury, it is apparent that they actually knew that they were injured by the defendant's negligence on July 17, 1980, when the letter was written to Heiskell. Although the plaintiffs may not have known the full extent of their injuries at this time, a "plaintiff cannot be permitted to wait until he knows all of the injurious effects as consequence of an actionable wrong" before his action begins to accrue. *Id.* at 898, *citing Security Bank & Trust Co. v. Fabricating, Inc.,* 673 S.W.2d 860 (Tenn.1983), *Taylor v. Clayton Mobile Homes, Inc.,* 516 S.W.2d 72 (Tenn.1974). All of the Western District defendants had been irremediably dismissed at this time and the plaintiffs knew that Hamilton Bancshares debts had been discharged and their assets disbursed. The only thing not determined on July 17, 1980 was the exact amount of the plaintiffs' injury. This does not toll the statute of limitations.

## II.

### *Money Center Banks*

■ Heiskell attempted to join Money Center Banks in the original cause pursuant to an amended complaint. This complaint was filed without leave of court and without consent of the adverse parties and subsequently ruled ineffective on February 14, 1979. The plaintiffs' successor counsel, Krivcher & Magids, filed suit against Money Center Banks in the Shelby County Chancery Court on February 15, 1979. On September 10, 1981, the Chancellor ruled that this action was time barred. The Court of Appeals thereafter reversed the chancery court and on December 19, 1983, the Supreme Court reversed the Court of Appeals thereby dismissing the plaintiffs' claim against Money Center Bank.

The plaintiffs in this action were irremediably injured on February 14, 1979 or sometime prior thereto. Since this action was originally filed on March 26, 1976 then it was obviously barred by the statute of limitations by the time of the February 15, 1979 filing. Despite Krivcher & Magids' efforts, it was clear that the plaintiffs' action against Money Center Banks could not be reinstated. Krivcher & Magids obviously had knowledge of this defect because they thereafter futilely filed an action in chancery court. Accordingly, this action was time barred well before the tolling agreement came into effect.

### III.

### *Bankruptcy Proceedings*

Heiskell Donelson failed to preserve the plaintiffs' judgment by failing to file a claim in the Hamilton Bancshares bankruptcy proceeding. In addition, they failed to challenge the preferential transfer of assets of Hamilton First American to Hamilton Trust of Memphis. On June 17, 1976, Hamilton Bancshares' debts were discharged and their assets subsequently disbursed. Plaintiffs retained additional counsel on June 29, 1978. The plaintiffs in their exercise of reasonable care and diligence should have discovered the resulting injury from the defendant's negligence prior to December 4, 1983. This negligence had obviously become irremediable prior to this date because the time had passed to file a claim in the bankruptcy proceedings. Furthermore, it is evident from the record that the plaintiffs actually knew that they had been injured because on July 30, 1981, Samuel Mays of Heiskell Donelson discussed with Krivcher & Magids the defendant's failure to file a claim in the Hamilton Bancshares bankruptcy. In addition, this matter was again discussed on January 26, 1982.

For the foregoing reasons we are of the opinion that this action is time barred and the defendants are entitled to summary judgment. The judgment of the trial court is reversed and the case dismissed. Costs of this appeal are taxed to the appellees for which execution may issue if necessary.

HIGHERS, J., and McLEMORE, J. (Ret.) concur.