IN THE COURT OF APPEALS OF TENNESSEE

# FILED

**October 19, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**
AT JACKSON

_____

**P. PRESTON WILSON, Trustee**
**for the Estate of Blake A. Weber**
**and Lucy W. Weber, Debtors,**

    Plaintiff-Appellee,

                                    Shelby Circuit No. 84459

Vs.                               C.A. No. 02A01-9806-CV-00147

**GAIL MATHES,**

    Defendant-Appellant.

_____

FROM THE SHELBY COUNTY CIRCUIT COURT
THE HONORABLE ROBERT L. CHILDERS, JUDGE

Ronald D. Krelstein of Memphis
For Appellee

Tim Edwards and James F. Horner
Glassman, Jeter, Edwards and Wade, P.C., of Memphis
For Appellant

*AFFIRMED AND REMANDED*

Opinion filed:

**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

**DAVID R. FARMER, JUDGE**

**HOLLY KIRBY LILLARD, JUDGE**

This is a legal malpractice action. Defendant/appellant, Gail Mathes (Mathes), appeals the order of the trial court denying her motion for summary judgment.[1]

In the summer of 1992, Blake Weber (Weber) was fired from his job at Jefferson Pilot Insurance allegedly for attempting to hire an African-American woman. In the fall of 1992, Weber hired Mathes to represent him in an action against Jefferson Pilot for retaliatory discharge. Mathes filed an action on behalf of Weber against Jefferson Pilot on August 31, 1993, two weeks after the one-year anniversary date of his discharge. Jefferson Pilot then filed a motion for summary judgment on the basis that the action was filed after the one-year limitation period had expired, which the trial court granted on January 18, 1994.

Mathes then filed notice of appeal, and this Court affirmed the trial court's dismissal on January 17, 1996. At that time, Mathes informed Weber that he may have a malpractice claim against her. Mathes's application for permission to appeal was granted by the Supreme Court. Subsequently, the decision of the Court of Appeals was affirmed.

Weber and his wife declared bankruptcy at some point prior to filing this action, and the bankruptcy trustee, P. Preston Wilson (Wilson), filed the present action for malpractice on January 15, 1997.[2] Mathes filed a motion for summary judgment on the basis that the one-year statute of limitations for legal malpractice actions began to run on January 18, 1994, when the trial court initially dismissed Weber's case, and that the suit was time barred.

The trial court denied Mathes' motion for summary judgment, and she was granted an interlocutory appeal by the trial court and this Court pursuant to T.R.A.P. 9. Mathes

presents the following issues in her brief:

> 1. Whether the Trial Court erred in denying the Motion for Summary Judgment of Defendant Gail Mathes holding that a genuine issue of material fact existed with regard to whether Plaintiff's claims of legal malpractice against Defendant Gail Mathes were barred by the one (1) year statute of limitations contained in T.C.A. § 28-3-104?
>
> 2. Whether the one (1) year statute of limitations for legal malpractice actions set forth in T.C.A. § 28-3-104 is tolled where an attorney allegedly committing malpractice fails to advise his/her client of such malpractice even though the client is aware of all facts upon which said claim of malpractice is based over one (1) year prior to filing his claim for legal malpractice.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence.

*Id.* In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 [now Rule 56.06] provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id.* at 211 (citations omitted) (emphasis in original).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *Baie*, 936

S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

An action for legal malpractice must be commenced "within one (1) year after the cause of action accrued." T.C.A. § 28-3-104(a)(2) (Supp. 1998). *Carvell v Bottoms*, 900 S.W.2d 23 (Tenn. 1995), is the seminal case in Tennessee involving the accrual of a legal malpractice cause of action. In *Carvell*, the plaintiffs retained the legal services of the defendants for the purpose of selling a real estate parcel to Ms. Roaby Baxter. Although a preliminary title opinion drafted by the defendants indicated the existence of a pipeline easement across the property, the warranty deed prepared by the defendants did not mention the easement. A few years after purchasing the property, Ms. Baxter filed suit against the Carvells upon discovering the existence of the easement. The plaintiffs were put on notice at some point soon thereafter that the defendants may have negligently drafted the warranty deed. In January of 1989, a trial court entered an order on a jury verdict in favor of Ms. Baxter.[3] Both parties appealed, but the trial court's judgment was affirmed in March of 1990. The plaintiffs proceeded to bring a legal malpractice suit against the defendants in May of 1990. *Id.* at 24-25.

The plaintiffs argued that the cause of action did not accrue until the Court of Appeals decision was filed in March of 1990, claiming that their injury did not become "irremediable" until all of their possible appeals had been exhausted. *Id.* at 29. The Supreme Court rejected the plaintiffs' argument and held that although the plaintiffs' injury need not be "irremediable" there must be a "legally cognizable" or "actual" injury.[4] *Carvell*, 900 S.W.2d at 29-30. The Court further stated that "the plaintiff is deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct." *Id.* at 29 (quoting *Roe v. Jefferson*, 875 S.W.2d 653, 657 (Tenn. 1994)). Applying this standard, the Court noted that the Carvells should have known that they had sustained an injury as a result of the lawyer's negligence

when they were sued by Baxter in 1986.  *Carvell*, 900 S.W.2d at 29.

Thus, a cause of action for legal malpractice accrues when: 1) the defendant's negligence causes the  plaintiff to suffer a legally cognizable or actual injury; and 2) the plaintiff knows "or in the exercise of reasonable diligence should have known that this injury was caused by defendant's negligence." *Id*. at 28, 30.

Before *Carvell,* Tennessee courts struggled with the issue of the accrual of a legal malpractice cause of action on numerous occasions.  In *Ameraccount Club, Inc. v. Hill*, 617 S.W.2d 876 (Tenn. 1981), the plaintiff corporation employed the defendant attorneys to register a service mark and logo with the United States Patent Office.  After learning in March of 1975 that their application filed in December of 1974, was incomplete, the defendants completed the application, and a registration date of March 13, 1975 was assigned.  The defendants, however, failed to conduct a search of whether any other applications for similar service marks had been submitted.  By letter of August 13, 1975, the plaintiff was notified that another company had submitted an application for a similar service mark in February of 1975.  Although the other company was conferred precedence, the plaintiff was notified that it retained the right to contest this conferral.  Shortly thereafter (before August 27, 1975),  the plaintiff conducted a shareholders' meeting in which the members agreed that the defendants had acted negligently.  The plaintiff never contested the Patent Office's decision and was notified on April 27, 1976 that the Patent Office had officially refused its application.  The plaintiff filed a legal malpractice suit against the defendants on August 27, 1976. *Id.* at 876-77.

The Supreme Court rejected the defendants' argument that the cause of action accrued at the point that the plaintiff discovered the defendants' negligence.  Instead, the Court held that "more was required, viz., damage or injury to the plaintiff resulting from that negligence," and found that the plaintiff did not suffer an injury from the alleged negligence until the Patent Office rejected its application on April 27, 1996. *Id.* at 878.  The Court cited approvingly the notion that the cause of action accrues at the point at which the alleged

negligence becomes "irremediable." *Id.* at 879 (quoting *Chamberlain v. Smith*, 72 Cal. App. 3d 835, 140 Cal. Rptr. 493 (1977)).

In *Security Bank & Trust Co. v. Fabricating, Inc.*, 673 S.W.2d 860 (Tenn. 1983), a town's local bond counsel assisted in the issuance of revenue bonds that were personally guaranteed by two individuals. The bonds defaulted on October 1, 1974, and it was subsequently discovered that the bond issue may have been fraudulently conceived by the two individual guarantors. A few months later, the town and the trustee bank filed suit against the two guarantors,[5] seeking recovery for the failure of the bond issue. In the Summer of 1975, letters were written to the trustee bank recommending that a suit be brought on behalf of the bondholders against certain parties, including the bond attorneys. A legal malpractice suit was not brought against these attorneys, however, until November of 1976. *Id.* at 861-63.

The Supreme Court rejected the plaintiffs' argument that the cause of action did not accrue until the suit against the guarantors was concluded. Citing *Ameraccount, supra,* the Court stated:

> Obviously, negligence without injury is not actionable; hence, the statute of limitations could not begin to run until the attorney's negligence had resulted in injury to the plaintiff. In the instant case, the injury to the bondholders occurred on October 1, 1974, *when the bonds defaulted*. There is no merit whatever in the plaintiffs' argument that their injury did not occur until the suit against the guarantors in Texas was concluded. A plaintiff cannot be permitted to wait until he knows all of the injurious effects as consequences of an actionable wrong.

*Security Bank*, 673 S.W.2d at 864-65 (internal citation omitted) (emphasis in original).

In *Chambers v. Dillow*, 713 S.W.2d 896 (Tenn. 1986), the plaintiff hired the defendant attorney to represent him in a suit against the county. The plaintiff's suit against the county was dismissed in March of 1981 for failure to prosecute. After being notified of this dismissal in March of 1982, the plaintiff hired another attorney, who filed a T.R.A.P. 60.02 motion to set aside the order of dismissal. Although this motion was granted, the trial

court ultimately dismissed the suit for the second time in April of 1983. The plaintiff filed a malpractice suit against the defendant and the defendant's law firm in October of 1983. *Id.* at 896-97.

The plaintiff argued that his cause of action did not accrue until the date of the second dismissal. The Supreme Court, however, found that the plaintiff suffered "irremediable" injury on the date of the first order of dismissal in March of 1981, since this dismissal qualified as "an adjudication upon the merits" in accordance with T.R.A.P. 41.02(3).[6] *Chambers*, 713 S.W.2d at 898. The Court stated:

> Where as here the client has knowledge of the lawyer's negligence, of the termination of his lawsuit, of the legal consequences of that termination, and has employed another lawyer to prosecute his malpractice claim, he cannot defer the irremediable injury date by futile efforts to revive a legally dismissed lawsuit.

*Id.* The Court also noted that the plaintiff had suffered "sufficient" tangible injury at the point of his discovery that the initial suit was dismissed: namely he was liable for the court costs of his dismissed suit, he had lost at least the interest on anticipated money recovery, and he was faced with the prospect of incurring attorney's fees for the impending legal malpractice suit. *Id.* at 898-99. *See also Bland v. Smith*, 197 Tenn. 683, 277 S.W.2d 377 (1955).

This Court considered this issue in 1986 in *Memphis Aero Corp. v. Swain*, 732 S.W.2d 608 (Tenn. App. 1986). The plaintiff in *Memphis Aero* hired the defendant attorney to collect the balance of an account owed by Argonauts, Inc.. The defendant proceeded to file a civil warrant and an attachment for an aircraft owned by Argonauts that was stored on the plaintiff's premises. The plaintiff's attachment was sustained when Argonauts failed to appear, and the aircraft was sold to satisfy the judgment. One month later, Argonauts notified the defendant that the attachment was wrongfully obtained since no service of process was ever received by Argonauts. Consequently, Argonauts filed suit for damages resulting from the wrongful attachment against the defendant and the plaintiff in August of 1978. A 1982 order by the trial court dismissing the suit was reversed by the Court of

Appeals and, ultimately, Argonauts was awarded a judgment in December of 1983. Also in December of 1983, the plaintiff sued the defendant for legal malpractice. *Id.* at 608-09.

We held that the cause of action accrued more than one year before the complaint was filed. Citing the aforementioned cases, we found that the plaintiff suffered an injury as early as the time that Argonauts filed its suit for the wrongful attachment in August of 1978, when the plaintiff "received periodic billings from its lawyers for services in the defense of the Argonauts case and paid bills as they were received throughout the pendency of that suit." *Id*. at 612; *see also Tennessee WSMP, Inc. v. Capps*, No. 03A01-9407-CV-00241, 1995 WL 83579 (Tenn. App. Mar. 2, 1995)*; Dukes v. Noe*, 856 S.W.2d 403 (Tenn. App. 1992); *Batchelor v. Heiskell, Donelson, Bearman, Adams, Williams & Kirsch*, 828 S.W.2d 388 (Tenn. App. 1991); *Bridges v. Baird*, Shelby Law No. 32, 1989 WL 740 (Tenn. App. Jan 9, 1989); *Denley v. Smith*, Shelby Law No. 48, 1989 WL 738, *4 (Tenn. App. Jan. 9, 1989) ("[T]he action accrued when any damages, no matter how small, became apparent. "); *Master Slack Corp. v. Bowling*, Hardeman Law No. 2, 1987 WL 10406 (Tenn. App. May 5, 1987); *Citizens Bank v. Williford*, No. 85-315-II, 1986 WL 6056, *7-9 (Tenn. App. May 29, 1986) (Koch, J., concurring); Annotation, *When Statute of Limitations Begins to Run Upon Action Against Attorney for Malpractice*, 18 A.L.R.3d 978 (1968).

Since *Carvell*, the issue has been revisited by the Court of Appeals on a few occasions. *See, e.g., Tanaka v. Meares*, 980 S.W.2d 210 (Tenn. App. 1998); *Rayford v. Leffler*, 953 S.W.2d 204 (Tenn. App. 1997); *Bokor v. Bruce*, No. 01A01-9603-CV-00119, 1996 WL 465235 (Tenn. App. Aug. 16, 1996)*; Smith v. Petkoff*, 919 S.W.2d 595 (Tenn. App. 1995). In *Porter-Metler v. Edwards*, No. 03A01-9709-CV-00393, 1998 WL 131515 (Tenn. App. Mar. 25, 1998), the plaintiff hired the defendant attorney to represent her in a personal injury suit. A complaint was filed[7] but process and alias process were returned unserved in 1993. Because further process was not issued and a new complaint was not timely filed, the trial court dismissed the action.[8] The plaintiff proceeded to bring a legal malpractice suit against the defendant on June 12, 1995. *Id.* at *1. Citing the two-prong

rule articulated in *Carvell, supra,* the Court stated:

> Regarding the first part of the discovery rule, plaintiff argues that she did not suffer a legally cognizable injury until the court entered an order dismissing her underlying case. If the issue of whether dismissal should have been granted were *less clear or open to reasonable legal debate*, the plaintiff might have a stronger argument. But in this case, where service of process was not timely reissued, it was patently clear that plaintiff's claim against [the alleged personal injury tortfeasor] had become time-barred and there was nothing that could have been done to revive her action. Thus, she suffered a legally cognizable injury at the expiration of the six-month period within which she was allowed by the Tennessee Rules of Civil Procedure to reissue a summons. . . .

*Id.* at *2 (emphasis added).

Finally, the Supreme Court recently addressed this issue again in *John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528 (Tenn. 1998). *Kohl* involved a legal malpractice claim concerning alleged erroneous advice given in connection with the client's profit sharing plan. The trial court found the law firm liable for some of its actions in connection with the profit sharing plan and awarded damages therefor. However, the trial court held that the claims relative to the rollovers and contributions of individual retirement account funds were barred by the one-year statute of limitations. The Court of Appeals affirmed the judgment of the trial court, and the Supreme Court affirmed the two lower courts.

The Court noted that in September of 1988, the Kohls received a letter from the IRS informing them of some problems with their 1986 tax return and requested further information concerning the statements in the return. The Kohls's accountant responded to the letter shortly thereafter with the information sought by the IRS. On October 24, 1988, Robert Kolarich, another of the Kohls's lawyers, wrote Dearborn & Ewing advising the law firm of new problems with the IRS concerning the pension and profit sharing plans. Mr. Kolarich's letter stated, among other things:

> Evidently, Mr. Huffstutter had advised that the funds held in an IRA account could be transferred to the pension and profit sharing account and the IRS is reviewing the transaction.

*Kohl*, 977 S.W.2d at 531.

On May 1, 1990, Kohl filed a legal malpractice suit against Huffstutter and Dearborn & Ewing alleging that they committed malpractice in connection with the profit sharing plan in various particulars. The trial court, in holding that the statute of limitations barred the claims pertaining to the rollover and contributions to the profit sharing plan, noted that the October 24, 1988 letter from Kolarich indicated that both Kohl and Kolarich were aware of the problem, and it was so severe that Kohl was changing law firms.

The *Kohl* Court began by reiterating the two-prong rule articulated in *Carvell, supra*. *Id.* at 532. In discussing the actual injury prong, the Court stated that "[a]n actual injury may also take the form of the plaintiff being forced to take some action or otherwise suffer 'some actual inconvenience,' such as incurring an expense, as a result of the defendant's negligent or wrongful act." *Id.* Moreover, the Court stated:

> A plaintiff may not, of course, delay filing suit until all the injurious effects or consequences of the alleged wrong are actually known to the plaintiff. Allowing suit to be filed once all the injurious effects and consequences are known would defeat the rationale for the existence of statutes of limitations, which is to avoid the uncertainties and burdens inherent in pursuing and defending stale claims.

*Id.* at 533 (citations omitted).

As for the facts before them, the Court noted that the Kohls needed only to be aware of facts sufficient to put them on notice that an injury had been sustained as a result of erroneous advice, and that Kolarich's letter established that the Kohls had notice of a problem in this regard. The Court found that the inquiry by the IRS was sufficient in itself to satisfy the injury prong of the discovery rule, and that Kolarich's letter of October 24, 1988 to the law firm satisfied the knowledge prong. The Court said:

> The plaintiffs [Kohl] **suffered an actual injury for purposes of the discovery rule when they began to incur expenses, or at least had to take some action, as a result of the defendant's negligent advice.** This would have been on October 19, 1988 when their accountant had to respond to the IRS's request for information after it noted a conflict between the

amount reported by the plaintiffs on their tax returns and the amounts reported by payers. The plaintiffs' arguments to the contrary notwithstanding, the fact that the IRS had not taken any formal action against the Kohls as of that date, such as filing suit against them or issuing a deficiency notice, is largely irrelevant because, as noted above, it was unnecessary for the plaintiffs to have suffered all of the injurious effects or consequences of the defendant's negligence in order for the statute to begin running.

977 S.W.2d at 533 (emphasis added).

Mathes asserts that Weber suffered an injury when the chancery court dismissed his action on January 18, 1994. We agree. This appears to satisfy the first prong of the *Carvell* test. Mathes also asserts that Weber knew, or in the exercise of reasonable diligence should have known, that the trial court's dismissal of his action was caused by her negligence, thus satisfying the second prong of the *Carvell* test.[9]

When viewed in the light most favorable to Weber, the non-moving party, the facts in this case do not support a finding that Weber knew that he had suffered an injury as a result of Mathes's conduct prior to the Court of Appeals's affirmation of the trial court's dismissal. Weber's affidavit makes this point quite clear:

> I either met, or conferred by phone, with Ms. Mathes, or her associate, on many occasions. After suit was filed, I learned from Mathes that the defendant had filed a Motion to Dismiss. The defendant claimed that the statute of limitations had expired.
>
> Mathes did not advise me to seek the advice of independent counsel about a claim that I would have against her for legal practice. To the contrary, Mathes assured me that the Motion was meritless, and was a stalling tactic by Jefferson Pilot. She said not to worry about the Motion, she reassured me that my action had been timely filed. She insisted that the issue had been carefully researched before the case was filed.
>
> The Motion was set for a hearing. Mathes was not present and sent an associate to argue the Motion. Even before the hearing, Mathes continued to tell me that the Motion had no merit. At the conclusion of the hearing, the Motion was granted, and my case dismissed.
>
> I then met with Mathes. . . . Mathes stated in unequivocal terms that the trial court's ruling was wrong, and would be summarily reversed on appeal. She further stated that Chancellor Alisandratos was the most reversed judge in Shelby County, and that he just did not really understand Tennessee law on this issue.

> She continued to assure me that we would prevail on appeal while the appeal was being perfected. From the date of the trial court's dismissal until the date of the ruling of the Court of Appeals, she never advised me to seek the advice of independent counsel, or that I had a potential malpractice claim against her. While the appeal was pending, an offer of settlement was tendered by Jefferson Pilot. The offer was viewed by us as being "nuisance value" only. However, Mathes told me that the fact that an offer of any sort was being made reinforced her position that the trial court was wrong, and the decision would be reversed.

Mathes filed an affidavit which did not contradict that she clearly and repeatedly told Weber that the trial judge had erred in dismissing his action, and that the Court of Appeals would "summarily reverse[]" the trial court's dismissal. In *Porter-Metler v. Edwards*, No. 03A01-9709-CV-00393, 1998 WL 131515, *3 (E.S. Tenn. App. March 25, 1998), this Court stated in pertinent part:

> Tennessee courts have recognized and held that questions involving whether a person's behavior conforms to a standard of reasonable and diligent conduct, such as the second part of the malpractice discovery rule test, are questions of fact for a jury, unless the facts and the inferences drawn therefrom are so clear that reasonable persons could not disagree on the answer. (citations omitted).

We believe that Mathes' actions and assertions to Weber that the trial court had erred could cause "reasonable persons" to disagree as to whether Weber knew or should have known that he suffered an injury due to Mathes's negligence on the day that the trial court dismissed his cause of action. We have carefully reviewed the evidence in the record presented to this Court and conclude that a genuine issue of material fact exists as to whether Weber knew or should have known more than one year prior to filing this legal malpractice action that he had suffered an injury as a result of Mathes' wrongful conduct.

Accordingly, the order of the trial court denying summary judgment is affirmed, and the case is remanded to the trial court for such further proceedings as

are necessary. Costs of the appeal are assessed to appellant. The second issue is

pretermitted.

_____

                                **W. FRANK CRAWFORD,**
                                **PRESIDING JUDGE, W.S.**

**CONCUR:**

_____

**DAVID R. FARMER, JUDGE**

_____

**HOLLY KIRBY LILLARD, JUDGE**