**MEMPHIS AERO CORPORATION,**
Plaintiff-Appellee,

v.

**William R. SWAIN, Jr., et al.,**
**Defendants-Appellants.**

Court of Appeals of Tennessee,
Western Section, at Jackson.

Dec. 30, 1986.

Application for Permission to Appeal
Denied March 30, 1987.

Oscar C. Carr, III, Memphis, for plaintiff-appellee.

Wilbur C. Ruleman, Jr., Memphis for defendants-appellants.

CRAWFORD, Judge.

This case involves the statute of limitations in a legal malpractice action. Defendant, William R. Swain, Jr., appeals from the order of the trial court setting aside a jury verdict and judgment thereon for defendant and granting plaintiff, Memphis Aero Corporation, a directed verdict. No issue is presented concerning the merits of the trial court's action, but defendant contends that the plaintiff's cause of action is barred by the statute of limitations provided for in T.C.A. § 28-3-104 (1980) which we quote in pertinent part:

> [a]ctions and suits against attorneys for malpractice whether said actions are grounded or based in contract or tort, ... shall be commenced within one (1) year after cause of action accrued.

Memphis Aero's suit against Swain was filed December 9, 1983, and the real question presented in this appeal is when its cause of action accrued.

Swain was employed by Memphis Aero in the spring of 1978 to collect the balance of an account owed Memphis Aero by Argonauts, Inc. In furtherance of his employment, Swain filed a civil warrant and an attachment for an airplane owned by Argo-

nauts but stored at Memphis Aero. The suit sought a judgment against Argonauts for the accrued storage fees for the airplane. On the trial date in General Sessions Court no one appeared on behalf of Argonauts, Inc., but Swain appeared for Memphis Aero. The attachment was sustained and Memphis Aero was awarded judgment in the amount of $460.43. Swain did not check the file or any court record to determine whether service of process had been obtained on Argonauts, Inc., nor did he inquire of any court representative if such service had been obtained. To satisfy the judgment, Swain subsequently requested the Sheriff's Department to sell the aircraft previously attached. The sale was conducted on April 18, 1978, and Swain was present at the sale but no representative of Argonauts appeared. Swain still had not checked as to whether service of process was ever obtained on Argonauts. It is undisputed that Argonauts was not served with process in the general sessions case.

In May, 1978, Swain was contacted by a representative of Argonauts, Inc., and advised that no notice of the lawsuit had ever been given anybody at Argonauts. On August 14, 1978, Argonauts filed suit against Swain, Memphis Aero, and others for damages resulting from the alleged wrongful attachment.

By letter of September 1, 1978, James S. Gilliland, the attorney representing Memphis Aero in the defense of the Argonauts case, wrote Swain and stated quite clearly Memphis Aero's position. We quote from the letter:

> Memphis Aero's position is, simply stated, that you got them into it and that they expect you to get them out of it. Rather than arguing about fault, with the hard feelings that would likely engender, very simply, and with no hard feelings, they look to you to take care of it without cost to them.

The "in house" counsel for Memphis Aero wrote to Swain by letter of December 12, 1979, and reiterated that Memphis Aero had had to retain outside counsel to defend it and [to] "attempt to rectify the situation

that you [Swain] created through your malfesance or non-feasance."

At the conclusion of the proof in the Argonauts suit, the trial court dismissed Argonauts' complaint. The case was appealed to the Court of Appeals and by judgment of the Court of Appeals entered on December 14, 1982, the decree of the chancellor was reversed and the case was remanded to the Chancery Court for a determination as to the damages to be awarded to Argonauts and the purchaser at the execution sale against Memphis Aero. The damages were subsequently determined to be in the amount of $23,809.51 for which final judgment was entered on December 28, 1983. The instant case which had been filed December 9, 1983, proceeded to trial and the jury returned a verdict for Swain. Judgment was entered on the jury verdict January 2, 1986. On motion for judgment notwithstanding the verdict and for direction of verdict for plaintiff, the trial court set aside the jury verdict, directed a verdict for the plaintiff and awarded judgment against Swain in the amount of $39,971.95. The judgment amount included the amount of Argonauts' judgment, attorney's fees and other expenses included in the defense of Memphis Aero.

Swain contends that the cause of action for legal malpractice accrued at least as of September 1, 1978, the date of the letter from Memphis Aero's law firm to Swain referred to above. Furthermore, Swain asserts that in any event it is quite clear that Memphis Aero was cognizant of alleged malpractice as of December 12, 1979, when the letter referred to above was written by Memphis Aero's general counsel to Swain. Memphis Aero contends that the cause of action accrued on December 14, 1982, the date the Court of Appeals reversed and remanded the Argonaut suit against Memphis Aero to the Chancery Court to determine damages. It asserts that this suit against Swain filed December 9, 1983, was filed within one year of the accrual of the cause of action.

Although we have been unable to find any case precisely on point, our Supreme Court has had occasion in the last few

years to consider several cases involving the statute of limitation question in legal malpractice actions. In *Ameraccount Club, Inc. v. Hill,* 617 S.W.2d 876 (Tenn. 1981), the defendant attorneys were employed to register a service mark and logo with the United States Patent Office. The application was duly submitted in December, 1974, but upon inquiry by the lawyers on March 3, 1975, they learned that the application was incomplete because an insufficient number of logo copies had been submitted. On March 13, 1975, they submitted the required copies and that date, March 13, 1975, was assigned as the filing date of the application. In the meantime, between the date of the original filing in December, 1974, and the March, 1975, date, someone else filed an application for a similar service mark and logo. In August, 1975, the patent office notified the attorneys that the effective filing date was subsequent to the other pending applications and in effect stated that the other application took precedence. The letter also advised of some suggested corrections to be made on the application if further action was desired. Plaintiff was furnished a copy of this letter and plaintiff's shareholders met shortly thereafter which was sometime before August 27, 1975, and agreed that the defendants had been negligent in the manner in which they handled the application. Plaintiff then in September, 1975, retained a Washington attorney to handle the matter, but finally on April 27, 1976, the patent office refused to register plaintiff's service mark. The legal malpractice suit was filed August 27, 1976, contending that the defendant attorneys had negligently represented plaintiff in attempting to register the service mark and logo. Both the trial court and the Court of Appeals held that the negligence of the defendant-attorneys was known by plaintiff's shareholders and officers for more than one year before the filing of the lawsuit. The Supreme Court in reversing the Court of Appeals and holding plaintiff's cause of action not time barred, approved the holding of a California court that:

A cause of action against an attorney for professional negligence accrued as of the date on which the negligence became irremediable.

In reaching this decision, the court said:
In *Teeters v. Currey* [518 S.W.2d 512], *supra,* we did hold in that medical malpractice action that the statute of limitations began to run when the patient discovered, or in the exercise of reasonable care and diligence for her own health and welfare, should have discovered the resulting injury. 518 S.W.2d at 517. We continue to adhere to our decision in *Teeters,* but we think that the appellate court misapplied its rationale in the instant case. The Court of Appeals erred in holding that the plaintiff's cause of action accrued and the statute of limitations began to run when the plaintiff became aware of the negligence of the defendant attorneys; still more was required, viz., damage or injury to the plaintiff resulting from that negligence. In *McCroskey v. Bryant Air Conditioning Company,* Tenn., 524 S.W.2d 487, 491 (1975), we held with respect to an action for damages based upon a products liability theory that "the cause of action accrues and the statute of limitations commences to run when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered."
The reasoning and rule applied in *McCroskey* and in *Teeters* applies in the instant case. Although the plaintiff may have been aware of the defendant attorneys' "negligence" as early as August 18, 1975, or September 2, 1975, no damage or injury resulted to the plaintiff by reason of that "negligence" until on or about April 27, 1976, when the United States Patent Office rejected the plaintiff's application. *See, Roberts v. Berry,* 541 F.2d 607, 610 (6th Cir.1976).
*Id.* at 878.

In *Security Bank & Trust Co. v. Fabricating, Inc.,* 673 S.W.2d 860 (Tenn.1983), a class action was brought by representatives of a class of bond holders against a law firm for damages resulting from alleged malpractice. In determining when the cause of action accrued, the court said:

Obviously, negligence without injury is not actionable; hence, the statute of limitations could not begin to run until the attorney's negligence had resulted in injury to the plaintiff. In the instant case, the injury to the bondholders occurred on October 1, 1974, *when the bonds defaulted.* There is no merit whatever in the plaintiffs' argument that their injury did not occur until the suit against the guarantors in Texas was concluded. A plaintiff cannot be permitted to wait until he knows all of the injurious effects as consequences on an actionable wrong. *Taylor v. Clayton Mobile Homes, Inc.,* Tenn., 516 S.W.2d 72 (1974).

*Id.* at 864–65.

In *Chambers v. Dillow,* 713 S.W.2d 896 (Tenn.1986), defendant attorney was employed to sue Washington County for damages caused to plaintiff's real estate in the paving and repairing of an adjacent roadway. The lawyer timely filed a negligence suit under the Governmental Tort Liability Act on March 28, 1980, but failed to include a cause of action for inverse condemnation. On March 18, 1981, the suit was dismissed for failure to prosecute [1] and plaintiff was informed of the dismissal in March of 1982. Plaintiff then employed another lawyer who asserted the plaintiff's malpractice claim in a letter dated March 22, 1982, to one of the defendant lawyers. On April 12, 1982, the new lawyer again wrote to the defendant's lawyers asserting defendant's negligence for failing to include a cause of action for inverse condemnation. Despite his assertions of negligence against the defendants, the new lawyer filed a motion on May 26, 1982, pursuant to Tenn.R.Civ.P. 60.02 to set aside the order of dismissal of the original suit filed by defendant lawyers. The motion was granted, the case was restored to the docket and plaintiff was allowed to amend his complaint to allege inverse condemnation. Thereupon, Washington County filed a plea relying on the one-year statute of limitations relating to the inverse condemnation action. This plea was sustained and plaintiff's suit was dismissed for the second time on April 18,

1983. This malpractice action was filed October 19, 1983. Defendants entered a plea of the one-year statute of limitations and moved for summary judgment on the grounds that the action had accrued more than one year prior to the suit being filed. The trial court dismissed the suit on the grounds that the alleged negligence of the defendant attorneys became irremediable in March, 1982 when he learned that the first lawsuit was dismissed March 18, 1981. The Court of Appeals held that the statute of limitations began to run in March, 1982, when plaintiff first learned of his lawyer's negligence, but that the reinstatement of the case pursuant to the new lawyer's motion served to toll the running of the statute until the second dismissal on April 18, 1983, and that plaintiff's suit against the county was not irremediable until the second dismissal. The Supreme Court reversed the Court of Appeals and held that the lawyer's negligence resulting in the dismissal of the lawsuit became irremediable in March, 1982, when plaintiff first learned the case had been dismissed. Justice Fones, speaking for the Court:

> We reject the notion advanced by the Court of Appeals that a legal error by a trial court later vacated, which merely delays the final disposition of a lawsuit, will defer the irremediable injury sustained by the client of a negligent lawyer. Where as here the client has knowledge of the lawyer's negligence, of the termination of his lawsuit, of the legal consequences of that termination, and has employed another lawyer to prosecute his malpractice claim, he cannot defer the irremediable injury date by futile efforts to revive a legally dismissed lawsuit.

> There is an additional reason why plaintiff's cause of action for malpractice accrued in March 1982. Assuming that the full extent of his damages were not ascertainable at that time, we have held that a plaintiff cannot be permitted to wait until he knows all of the injurious effects as consequences of an actionable wrong. *Security Bank and Trust Co. v.*

**1.** Pursuant to Tenn.R.Civ.P. 41.02 this operates as an adjudication upon the merits.

*Fabricating Inc.*, 673 S.W.2d 860 (Tenn. 1983); *Taylor v. Clayton Mobile Homes, Inc.*, 516 S.W.2d 72 (Tenn.1974). Plaintiff was liable for the court costs of his dismissed lawsuit, he had suffered a lengthy delay in the process of his case, even if it be assumed it was subject to revival, and at a minimum had lost the interest on the use of an anticipated money recovery. Also he was immediately faced with the necessity to incur additional attorney's fees, all as a direct result of Frost's negligence. Those damages, which had matured in March 1982, together with his full knowledge of Frost's negligence, were sufficient *injury* to trigger the accrual of plaintiff's cause of action without regard to whether or not the Washington County lawsuit had reached the irremediable stage.

*Id.* at 898–99.

When Argonauts filed the lawsuit against Memphis Aero and Swain in August, 1978, Memphis Aero was put on notice that there was an indication that Swain had not performed his duties as an attorney in a proper manner. The letter of September 1, 1978, from Memphis Aero's new lawyer to Swain is quite clear that Memphis Aero held Swain responsible for any expenses incurred by Memphis Aero in the defense of the Argonauts lawsuit. It is inescapable from the "in house" counsel's letter of December, 1979, that Memphis Aero considered Swain guilty of "malfeasance or non-feasance." Memphis Aero received periodic billings from its lawyers for services in the defense of the Argonauts case and paid bills as they were received throughout the pendency of that suit. Swain refused to pay any of the bills. Memphis Aero knew when it was sued by Argonauts in August, 1978, that Swain had failed to exercise ordinary care and diligence in performing his services as Memphis Aero's attorney and certainly knew in September, 1978, that such action on the part of Swain was going to cause it to incur attorney's fees in defending the case. It is true that until the Court of Appeals reversed the trial court in the Argonauts case, Memphis Aero's liability for conversion was not established. However, the damages resulting from Memphis Aero's alleged conversion constitute only one element of damages resulting from the alleged malpractice. It is clear that in 1978 Memphis Aero knew that Swain was negligent and knew that Swain's negligence had resulted in damage to Memphis Aero. Our Supreme Court has specifically held that a plaintiff cannot be permitted to wait until he knows all of the injurious effects or consequences of an actionable wrong to delay the accrual of a cause of action. *Security Bank & Trust Co. v. Fabricating, Inc.*, 673 S.W.2d 860 (Tenn.1983). We believe that *Chambers v. Dillow*, 713 S.W.2d 896, controls the case at bar. As was the plaintiff in *Chambers*, Memphis Aero in September, 1978, "was immediately faced with the necessity to incur additional attorney fees all as a direct result of [Swain's] negligence." These damages were occurring from the time of the filing of Argonauts' lawsuit and together with Memphis Aero's knowledge of Swain's negligence were sufficient injury to trigger the accrual of plaintiff's cause of action. Accordingly, we hold that Memphis Aero's suit filed December, 1983, was filed more than one year after the accrual of its cause of action and therefore is barred by the statute of limitations, T.C.A. § 28-3-104 (1980).

The judgment of the trial court is reversed and this case is dismissed. Costs of the appeal are assessed against the appellee.

HIGHERS and FARMER, JJ., concur.