IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON

# CHARLES SEAVEY MCDONALD v. DIXIE WHITE ISHEE, ET AL.

**A Direct Appeal from the Chancery Court for Shelby County**
**No. 109178-3, No. 86783-4     The Honorable Joe C. Morris, Chancellor**

---

**No. W1998-00258-COA-R3-CV - Decided May 31, 2000**

---

This is a legal malpractice case. Plaintiff sued defendant-attorneys alleging (1) that defendants gave him negligent advice concerning acceptance of a proposed settlement which resulted in plaintiff receiving nothing when the jury returned a verdict for the defendants, and (2) that defendants negligently recommended to plaintiff that he withdraw his motion for a new trial. The trial court granted summary judgment to defendants based on the bar of the one-year statute of limitations. On appeal, this Court affirms the order granting summary judgment as to the negligent advice concerning the acceptance of the settlement and reverses the order as to the advice concerning withdrawal of the motion for a new trial.

**Tenn.R.App.P. 3; Appeal as of Right; Judgment of the Chancery Court is Affirmed in Part, Reversed in Part, and Remanded**

CRAWFORD, P.J., W.S., delivered the opinion of the court, in which FARMER, J., and LILLARD, J., joined.

James F. Schaeffer, Jr., Memphis, For Appellant

Tim Edwards, James F. Horner, Memphis, For Appellees

**OPINION**

Plaintiff/Appellant, Charles Seavey McDonald (McDonald), executor of the estate of Alice M. McDonald (the estate), appeals the trial court's order granting summary judgment to defendants, Dixie White Ishee and Harkavy, Shainberg, Kosten and Kaplan, P.A.

Alice McDonald died during a hospital stay. Her estate retained the defendant/appellee, Dixie White Ishee, to represent it in a medical malpractice action against the hospital and doctors. On November 17, 1995, the estate settled with the hospital for $100,000.00. The doctors involved in the suit also made an offer of judgment for $325,000.00, which the estate rejected in December 1995, and the case proceeded to trial against the doctors. At the close of trial, the jury returned a

-1-

verdict in favor of the doctors on February 15, 1996. A motion for new trial was filed by the estate on March 15, 1996. However, based on the advice of Ishee, the estate withdrew its motion for new trial on April 15, 1996.

On March 20, 1997, defendant, the law firm of Harkavy, Shainberg, Kosten & Kaplin, P.A. (hereinafter Law Firm) together with the law firm of Neely, Green, Fargarson, Brooke & Summers sued the individual heirs to the estate in chancery court for breach of contract in failing to pay their attorneys' fees. On April 15, 1997, the estate filed a complaint in circuit court against Ishee and the Law Firm[1] for legal malpractice, alleging that the lawyers gave erroneous advice in recommending that the estate reject the doctor's offer of settlement and that it withdraw its March 15, 1996, motion for new trial. These cases were consolidated for trial by order entered July 27, 1998.

On August 20, 1997, the defendants in the malpractice case filed their motion for summary judgment based on the statute of limitations. The defendants' motion for summary judgment was heard, and on October 7, 1998, an order was entered granting the motion for summary judgment. Plaintiff appeals and presents the following issues for our review:

> 1. Whether the trial court's granting of the defendant's motion for summary judgment was proper.
>
> 2. Whether the trial court's entry of final judgment under rule 54.02 was proper.
>
> 3. Whether the trial court erred in holding that the statute of limitations had expired prior to the filing of the complaint.

First, we will consider plaintiff's second issue. The plaintiff asserts that making the order a final order pursuant to Tenn.R.Civ.P. 54.02 was an error, because the legal competence of the defendants' representation of plaintiff "will be litigated as an affirmative defense to the claim for attorney's fees." The record reflects that the case before us on appeal was a separate cause of action and consolidated for the purposes of trial. The cause of action before us is solely a cause of action for legal malpractice, involving only the one plaintiff against the two defendants to whom summary judgment was granted. Therefore, the order granting summary judgment would have been final without the 54.02 language. Plaintiff's contention that there are issues remaining to be tried, because he relies upon the defendants' action as a defense to the breach of contract is without merit. This case was dismissed on the basis of the statute of limitations, and the bar of the statute of limitations affects only the party's remedy, and, as such, it is a procedural mechanism and may be waived. The statute of limitation's bar does not eliminate the right but only the remedy. *See Wyatt v. A-Best Products Co.*, 924 S.W.2d 98 (Tenn. Ct. App. 1995); *Bruce v. Hamilton*, 894 S.W.2d 274 (Tenn. Ct. App. 1993). Thus, because plaintiff's suit is barred by the statute of limitations, it would have

---

[1] The complaint also named Robert Green and Neely, Green, Fargarson, Brooke, and Summers as defendants, but they were subsequently voluntarily dismissed.

no effect on any use of the alleged malpractice of the defendants as a defense to the breach of contract case. This issue is without merit.

Issues 1 and 3 are considered together, wherein the plaintiff asserts that the trial court erred in granting summary judgment.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn.R.Civ.P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *Id.* In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth specific facts showing that there is a genuine issue of material fact for trial.

*Id.* at 211 (citations omitted).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *Bain*, 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is de novo on the record before this Court. *Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

The real question presented in these issues is when appellant's cause of action accrued. In *Wilson v. Mathes*, 1999 WL 10979, No. 02A01-9806-CV-00147 (Tenn. Ct. App. 1999) (permission to appeal denied March 6, 2000), this Court, in considering the issue of accrual of a legal malpractice cause of action, reviewed the leading Tennessee authorities on the subject. The Court said:

> An action for legal malpractice must be commenced "within one (1) year after the cause of action accrued." T.C.A. § 28-3-104(a)(2) (Supp. 1998). *Carvell v Bottoms*, 900 S.W.2d 23 (Tenn. 1995), is the seminal case in Tennessee involving the accrual of a legal malpractice cause of action. In *Carvell*, the plaintiffs retained the legal services of the defendants for the purpose of selling a real estate parcel to Ms. Roaby Baxter. Although a preliminary title

opinion drafted by the defendants indicated the existence of a pipeline easement across the property, the warranty deed prepared by the defendants did not mention the easement. A few years after purchasing the property, Ms. Baxter filed suit against the Carvells upon discovering the existence of the easement. The plaintiffs were put on notice at some point soon thereafter that the defendants may have negligently drafted the warranty deed. In January of 1989, a trial court entered an order on a jury verdict in favor of Ms. Baxter.[2] Both parties appealed, but the trial court's judgment was affirmed in March of 1990. The plaintiffs proceeded to bring a legal malpractice suit against the defendants in May of 1990. *Id.* at 24-25.

The plaintiffs argued that the cause of action did not accrue until the Court of Appeals decision was filed in March of 1990, claiming that their injury did not become "irremediable" until all of their possible appeals had been exhausted. *Id.* at 29. The Supreme Court rejected the plaintiffs' argument and held that although the plaintiffs' injury need not be "irremediable" there must be a "legally cognizable" or "actual" injury.[3] *Carvell*, 900 S.W.2d at 29-30. The Court further stated that "the plaintiff is deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct." *Id.* at 29 (quoting *Roe v. Jefferson*, 875 S.W.2d 653, 657 (Tenn. 1994)). Applying this standard, the Court noted that the Carvells should have known that they had sustained an injury as a result of the lawyer's negligence when they were sued by Baxter in 1986. *Carvell*, 900 S.W.2d at 29.

Thus, a cause of action for legal malpractice accrues when: 1) the defendant's negligence causes the plaintiff to suffer a legally cognizable or actual injury; and 2) the plaintiff knows "or in the exercise of reasonable diligence should have known that this injury was caused by defendant's negligence." *Id*. at 28, 30.

Before *Carvell,* Tennessee courts struggled with the issue of the accrual of a legal malpractice cause of action on numerous occasions. In *Ameraccount Club, Inc. v. Hill*, 617 S.W.2d 876

---

[2] The trial court, however, suggested a remittitur.

[3] The *Carvell* Court stated that term, "irremediable," used by the Court in *Ameraccount Club, Inc. v. Hill*, 617 S.W.2d 876, 879 (Tenn. 1984), was "pure dicta." *Carvell,* 900 S.W.2d at 29-30.

(Tenn. 1981), the plaintiff corporation employed the defendant attorneys to register a service mark and logo with the United States Patent Office. After learning in March of 1975 that their application filed in December of 1974, was incomplete, the defendants completed the application, and a registration date of March 13, 1975 was assigned. The defendants, however, failed to conduct a search of whether any other applications for similar service marks had been submitted. By letter of August 13, 1975, the plaintiff was notified that another company had submitted an application for a similar service mark in February of 1975. Although the other company was conferred precedence, the plaintiff was notified that it retained the right to contest this conferral. Shortly thereafter (before August 27, 1975), the plaintiff conducted a shareholders' meeting in which the members agreed that the defendants had acted negligently. The plaintiff never contested the Patent Office's decision and was notified on April 27, 1976 that the Patent Office had officially refused its application. The plaintiff filed a legal malpractice suit against the defendants on August 27, 1976. *Id.* at 876-77.

The Supreme Court rejected the defendants' argument that the cause of action accrued at the point that the plaintiff discovered the defendants' negligence. Instead, the Court held that "more was required, viz., damage or injury to the plaintiff resulting from that negligence," and found that the plaintiff did not suffer an injury from the alleged negligence until the Patent Office rejected its application on April 27, 1996. *Id.* at 878. The Court cited approvingly the notion that the cause of action accrues at the point at which the alleged negligence becomes "irremediable." *Id.* at 879 (quoting *Chamberlain v. Smith*, 72 Cal. App. 3d 835, 140 Cal. Rptr. 493 (1977)).

In *Security Bank & Trust Co. v. Fabricating, Inc.*, 673 S.W.2d 860 (Tenn. 1983), a town's local bond counsel assisted in the issuance of revenue bonds that were personally guaranteed by two individuals. The bonds defaulted on October 1, 1974, and it was subsequently discovered that the bond issue may have been fraudulently conceived by the two individual guarantors. A few months later, the town and the trustee bank filed suit against the two guarantors,[4] seeking recovery for the failure of the bond issue. In the Summer of 1975, letters were written to the trustee bank

_____

[4] A corporation, Fabricating, Inc., was also listed as a defendant. This suit was eventually dismissed, but a different suit was later filed in Texas.

recommending that a suit be brought on behalf of the bondholders against certain parties, including the bond attorneys. A legal malpractice suit was not brought against these attorneys, however, until November of 1976. *Id.* at 861-63.

The Supreme Court rejected the plaintiffs' argument that the cause of action did not accrue until the suit against the guarantors was concluded. Citing *Ameraccount, supra,* the Court stated:

> Obviously, negligence without injury is not actionable; hence, the statute of limitations could not begin to run until the attorney's negligence had resulted in injury to the plaintiff. In the instant case, the injury to the bondholders occurred on October 1, 1974, *when the bonds defaulted*. There is no merit whatever in the plaintiffs' argument that their injury did not occur until the suit against the guarantors in Texas was concluded. A plaintiff cannot be permitted to wait until he knows all of the injurious effects as consequences of an actionable wrong.

*Security Bank*, 673 S.W.2d at 864-65 (internal citation omitted) (emphasis in original).

In *Chambers v. Dillow*, 713 S.W.2d 896 (Tenn. 1986), the plaintiff hired the defendant attorney to represent him in a suit against the county. The plaintiff's suit against the county was dismissed in March of 1981 for failure to prosecute. After being notified of this dismissal in March of 1982, the plaintiff hired another attorney, who filed a T.R.A.P. 60.02 motion to set aside the order of dismissal. Although this motion was granted, the trial court ultimately dismissed the suit for the second time in April of 1983. The plaintiff filed a malpractice suit against the defendant and the defendant's law firm in October of 1983. *Id.* at 896-97.

The plaintiff argued that his cause of action did not accrue until the date of the second dismissal. The Supreme Court, however, found that the plaintiff suffered "irremediable" injury on the date of the first order of dismissal in March of 1981, since this dismissal qualified as "an adjudication upon the merits" in accordance with

T.R.A.P. 41.02(3).[5] ***Chambers***, 713 S.W.2d at 898. The Court stated:

> Where as here the client has knowledge of the lawyer's negligence, of the termination of his lawsuit, of the legal consequences of that termination, and has employed another lawyer to prosecute his malpractice claim, he cannot defer the irremediable injury date by futile efforts to revive a legally dismissed lawsuit.

***Id.*** The Court also noted that the plaintiff had suffered "sufficient" tangible injury at the point of his discovery that the initial suit was dismissed: namely he was liable for the court costs of his dismissed suit, he had lost at least the interest on anticipated money recovery, and he was faced with the prospect of incurring attorney's fees for the impending legal malpractice suit. ***Id.*** at 898-99. ***See also Bland v. Smith***, 197 Tenn. 683, 277 S.W.2d 377 (1955).

This Court considered this issue in 1986 in ***Memphis Aero Corp. v. Swain***, 732 S.W.2d 608 (Tenn. Ct. App. 1986). The plaintiff in ***Memphis Aero*** hired the defendant attorney to collect the balance of an account owed by Argonauts, Inc.. The defendant proceeded to file a civil warrant and an attachment for an aircraft owned by Argonauts that was stored on the plaintiff's premises. The plaintiff's attachment was sustained when Argonauts failed to appear, and the aircraft was sold to satisfy the judgment. One month later, Argonauts notified the defendant that the attachment was wrongfully obtained since no service of process was ever received by Argonauts. Consequently, Argonauts filed suit for damages resulting from the wrongful attachment against the defendant and the plaintiff in August of 1978. A 1982 order by the trial court dismissing the suit was reversed by the Court of Appeals and, ultimately, Argonauts was awarded a judgment in December of 1983. Also in December of 1983, the plaintiff sued the defendant for legal malpractice. ***Id.*** at 608-09.

We held that the cause of action accrued more than one year before the complaint was filed. Citing the aforementioned cases, we found that the plaintiff suffered an injury as early as the time that Argonauts filed its suit for the wrongful attachment in August of 1978, when the plaintiff "received periodic billings from its lawyers

---

[5]  The Court, nevertheless, held that the cause of action did not accrue until the date that the plaintiff discovered that the initial suit was dismissed. ***Id.***

for services in the defense of the Argonauts case and paid bills as they were received throughout the pendency of that suit." ***Id***. at 612; ***see also Tennessee WSMP, Inc. v. Capps***, No. 03A01-9407-CV-00241, 1995 WL 83579 (Tenn. Ct. App. Mar. 2, 1995)***; Dukes v. Noe***, 856 S.W.2d 403 (Tenn. Ct. App. 1992); ***Batchelor v. Heiskell, Donelson, Bearman, Adams, Williams & Kirsch***, 828 S.W.2d 388 (Tenn. Ct. App. 1991); ***Bridges v. Baird***, Shelby Law No. 32, 1989 WL 740 (Tenn. Ct. App. Jan 9, 1989); ***Denley v. Smith***, Shelby Law No. 48, 1989 WL 738, *4 (Tenn. Ct. App. Jan. 9, 1989) ("[T]he action accrued when any damages, no matter how small, became apparent."); ***Master Slack Corp. v. Bowling***, Hardeman Law No. 2, 1987 WL 10406 (Tenn. Ct. App. May 5, 1987); ***Citizens Bank v. Williford***, No. 85-315-II, 1986 WL 6056, *7-9 (Tenn. Ct. App. May 29, 1986) (Koch, J., concurring); Annotation, ***When Statute of Limitations Begins to Run Upon Action Against Attorney for Malpractice***, 18 A.L.R.3d 978 (1968).

Since ***Carvell***, the issue has been revisited by the Court of Appeals on a few occasions. ***See, e.g., Tanaka v. Meares***, 980 S.W.2d 210 (Tenn. Ct. App. 1998); ***Rayford v. Leffler***, 953 S.W.2d 204 (Tenn. Ct. App. 1997); ***Bokor v. Bruce***, No. 01A01-9603-CV-00119, 1996 WL 465235 (Tenn. Ct. App. Aug. 16, 1996)***; Smith v. Petkoff***, 919 S.W.2d 595 (Tenn. Ct. App. 1995). In ***Porter-Metler v. Edwards***, No. 03A01-9709-CV-00393, 1998 WL 131515 (Tenn. Ct. App. Mar. 25, 1998), the plaintiff hired the defendant attorney to represent her in a personal injury suit. A complaint was filed[6] but process and alias process were returned unserved in 1993. Because further process was not issued and a new complaint was not timely filed, the trial court dismissed the action.[7] The plaintiff proceeded to bring a legal malpractice suit against the defendant on June 12, 1995. ***Id.*** at *1. Citing the two-prong rule articulated in ***Carvell, supra,*** the Court stated:

> Regarding the first part of the discovery rule, plaintiff argues that she did not suffer a legally cognizable injury until the court entered an order dismissing her underlying case. If the issue of whether dismissal should have been granted were ***less***

---

[6] The plaintiff had earlier filed a complaint but took a voluntary nonsuit. ***Id.*** at *1.

[7] Although the opinion does not specify the date of the trial court's order, presumably the order was entered within one year before June 12, 1995.

*clear or open to reasonable legal debate*, the plaintiff might have a stronger argument. But in this case, where service of process was not timely reissued, it was patently clear that plaintiff's claim against [the alleged personal injury tortfeasor] had become time-barred and there was nothing that could have been done to revive her action. Thus, she suffered a legally cognizable injury at the expiration of the six-month period within which she was allowed by the Tennessee Rules of Civil Procedure to reissue a summons. . . .

*Id.* at *2 (emphasis added).

Finally, the Supreme Court recently addressed this issue again in ***John Kohl & Co. P.C. v. Dearborn & Ewing***, 977 S.W.2d 528 (Tenn. 1998). ***Kohl*** involved a legal malpractice claim concerning alleged erroneous advice given in connection with the client's profit sharing plan. The trial court found the law firm liable for some of its actions in connection with the profit sharing plan and awarded damages therefor. However, the trial court held that the claims relative to the rollovers and contributions of individual retirement account funds were barred by the one-year statute of limitations. The Court of Appeals affirmed the judgment of the trial court, and the Supreme Court affirmed the two lower courts.

The Court noted that in September of 1988, the Kohls received a letter from the IRS informing them of some problems with their 1986 tax return and requested further information concerning the statements in the return. The Kohls's accountant responded to the letter shortly thereafter with the information sought by the IRS. On October 24, 1988, Robert Kolarich, another of the Kohls's lawyers, wrote Dearborn & Ewing advising the law firm of new problems with the IRS concerning the pension and profit sharing plans. Mr. Kolarich's letter stated, among other things:

Evidently, Mr. Huffstutter had advised that the funds held in an IRA account could be transferred to the pension and profit sharing account and the IRS is reviewing the transaction.

*Kohl*, 977 S.W.2d at 531.

On May 1, 1990, Kohl filed a legal malpractice suit against

Huffstutter and Dearborn & Ewing alleging that they committed malpractice in connection with the profit sharing plan in various particulars. The trial court, in holding that the statute of limitations barred the claims pertaining to the rollover and contributions to the profit sharing plan, noted that the October 24, 1988 letter from Kolarich indicated that both Kohl and Kolarich were aware of the problem, and it was so severe that Kohl was changing law firms.

The ***Kohl*** Court began by reiterating the two-prong rule articulated in ***Carvell, supra***. ***Id.*** at 532. In discussing the actual injury prong, the Court stated that "[a]n actual injury may also take the form of the plaintiff being forced to take some action or otherwise suffer 'some actual inconvenience,' such as incurring an expense, as a result of the defendant's negligent or wrongful act." ***Id.*** Moreover, the Court stated:

> A plaintiff may not, of course, delay filing suit until all the injurious effects or consequences of the alleged wrong are actually known to the plaintiff. Allowing suit to be filed once all the injurious effects and consequences are known would defeat the rationale for the existence of statutes of limitations, which is to avoid the uncertainties and burdens inherent in pursuing and defending stale claims.

***Id.*** at 533 (citations omitted).

As for the facts before them, the Court noted that the Kohls needed only to be aware of facts sufficient to put them on notice that an injury had been sustained as a result of erroneous advice, and that Kolarich's letter established that the Kohls had notice of a problem in this regard. The Court found that the inquiry by the IRS was sufficient in itself to satisfy the injury prong of the discovery rule, and that Kolarich's letter of October 24, 1988 to the law firm satisfied the knowledge prong. The Court said:

> The plaintiffs [Kohl] ***suffered an actual injury for purposes of the discovery rule when they began to incur expenses, or at least had to take some action, as a result of the defendant's negligent advice.*** This would have been on October 19, 1988 when their accountant had to respond to the IRS's request for information after it noted a conflict between the amount reported by the plaintiffs on their tax returns

and the amounts reported by payers. The plaintiffs'
arguments to the contrary notwithstanding, the fact
that the IRS had not taken any formal action against
the Kohls as of that date, such as filing suit against
them or issuing a deficiency notice, is largely
irrelevant because, as noted above, it was unnecessary
for the plaintiffs to have suffered all of the injurious
effects or consequences of the defendant's negligence
in order for the statute to begin running.

977 S.W.2d at 533 (emphasis added).

*Wilson*, at *4 - *7.

After ***Kohl***, this Court addressed the issue in ***Bradson Mercantile, Inc. v. Crabtree***, No. 02A01-9710-CV-00272 (Tenn. Ct. App. 1999). The plaintiff contractor provided labor for a construction project known as the Shelby Tissue project. When not paid for work completed on the project, plaintiff hired the defendant attorney to collect sums due and to perfect mechanic's and materialman's liens on the subject real property. The defendant law firm filed an action on behalf of Bradson, however, it failed to comply with the statutory requirements for perfection of the lien. On June 11, 1996, an order was entered in the underlying Shelby Tissue action holding that because Bradson had failed to perfect its mechanic's and materialman's lien, it had no protection under the Lien Creditors' Bill. The plaintiff filed its complaint for legal malpractice on June 26, 1996. ***Id.*** * 2. Holding that the statute of limitations had expired for a legal malpractice claim, the Court stated:

Bradson contends that it did not suffer from a "legally cognizable
injury" until the trial court entered an order dismissing its lien interest
in the Shelby Tissue project on June 11, 1996. Bradson claims that
it was impossible for it to know whether it had suffered an injury
until its alternative claims related to the Shelby Tissue litigation were
resolved.

\*                    \*                    \*

The evidence unequivocally demonstrates that Bradson was
aware that the Defendants may have been guilty of negligence at least
as early as 1994. Moreover, from a review of the record, it appears
that Bradson suffered an "actual" or "legally cognizable" injury at the
time the Law Firm allegedly failed to perfect the lien.

***Id.*** at 7, 8.

In this case, it is uncontroverted that the allegedly negligent advice concerning settlement was given to the plaintiff in December, 1995. Plaintiff asserts that he relied upon this advice and

-11-

failed to settle the case for the $325,000.00 offer. The case was ultimately tried, and when the jury returned its verdict on February 16, 1996 for the defendants, plaintiff had sustained a cognizable injury at that time. It should be quite apparent that when you refuse an offer of $325,000.00 and later end up getting nothing, you have, as the saying goes, "left $325,000.00 on the table." That is a cognizable injury. If defendants were negligent in failing to give plaintiff timely correct advice regarding settlement, this should also have been apparent at that time.

Plaintiff also asserts that he was given negligent advice as to the dismissal of his motion for new trial in April 1997. The instant suit was filed within one year of this allegedly negligent advice. Although the motion for a new trial is not a part of the record in this case, we may assume that it points out alleged errors committed by the trial court and the conduct of the trial resulting in verdicts for the defendants. We could also assume that a motion for a new trial seeks relief from the trial court as thirteenth juror. Plaintiff's complaint is primarily premised on the allegedly negligent advice concerning the acceptance of a settlement offer, and while the allegation concerning the motion for a new trial appears to be somewhat contradictory of that premise, it does attempt to assert an alternative cause of action. This is permissible under Tenn.R.Civ.P. 8.05 (2). The Advisory Commission Comment states: "Rule 8.05 (2) allows greater latitude in the statement of all the claims or defenses a party has, and expressly permits inconsistent pleadings." At this point, there simply is nothing in this record to warrant summary judgment or dismissal of a cause of action premised upon allegedly negligent advice to withdraw the motion for a new trial.

Accordingly, the order of the trial court granting summary judgment as to the action based upon the allegedly negligent advice concerning the offer of settlement is affirmed, and the order as it pertains to the withdrawal of the motion for new trial is reversed. The case is remanded to the trial court for such further proceedings as may be necessary. Costs of the appeal are assessed one-half to plaintiff and one-half to defendants.