# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
February 15, 2005 Session

## CAVALIER METAL CORPORATION, ET AL. v. FINCH & McBROOM, ET AL.

**A Direct Appeal from the Circuit Court for Henderson County**
No. 02086     The Honorable Roy B. Morgan, Jr., Judge

---

### No. W2004-01536-COA-R3-CV - Filed March 17, 2005

---

Appellants, who were represented in a lawsuit by Appellees, appeal the dismissal of their attorney malpractice suit against Appellees on the ground, among other things, that the Appellants did not file suit within the one-year statute of limitations for attorney malpractice actions. Finding no error, we affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

David Day of Cookeville For Appellants, Cavalier Metal Corporation and Judith A. White

Alan M. Sowell and M. Kristin Selph of Nashville For Appellees, Finch & McBroom, James McBroom, and Clifton B. Sobel, Jr.

## OPINION

## I. PROCEDURAL HISTORY

On September 17, 2001, Appellants Judith A. White and Cavalier Metals Corporation, filed a *pro se* complaint against Appellees, James McBroom, Clifton B. Sobel, Jr., and Finch & McBroom,[1] based on legal malpractice resulting from their alleged mishandling of the lawsuit of Cavalier Metal Corporation v. Johnson Controls, Inc., and Dewayne's Quality Metal Coating Co. Appellants nonsuited that case on October 22, 2001.

---

[1] In this opinion we will refer to the Appellants, Judith A. White and Cavalier Metals Corporation, collectively as "Cavalier Metals" or "Cavalier."

On October 17, 2002, Appellants filed the Complaint in the present action. In February 2003, the Appellees filed their Answer.

On April 21, 2003, Appellees filed a Motion to Dismiss. Appellants, through their attorneys, filed a Motion to Amend their complaint to seek declaratory judgment as to the Appellees' entitlement to attorneys fees and expenses for services in the underlying suit.

On May 30, 2003, the trial court conducted a hearing on the Appellees' Motion to Dismiss and Appellants' Motion to Amend, and ordered that Appellants' claims based on Appellees' alleged mishandling of punitive damages claims be dismissed; the balance of the Motion to Dismiss should be denied; and the Plaintiffs' Motion to Amend be denied.

In March of 2004, Appellees filed a Motion for Judgment on the Pleadings, based solely on the one-year statute of limitations for attorney malpractice actions. Appellants filed a response on April 14, 2004.

The trial court conducted a hearing on April 23, 2004, and subsequently entered an order granting Appellees' Motion for Judgment on the Pleadings. Appellants timely filed a notice of appeal on June 14, 2004.

## II. FACTS

In 2000, Cavalier Metal Corporation retained attorneys James McBroom and Clifton Sobel, of the law firm of Finch & McBroom, to represent it in a suit against Johnson Controls, Inc. and Dewayne's Quality Metal Coating Co.[2] Cavalier alleged that Johnson Controls breached its contract with Cavalier in a variety of ways, and that Dewayne's (a company providing metal-coating services similar to those offered by Cavalier) tortiously interfered with the contract between Cavalier and Johnson Controls.

This appeal arises out of the dissatisfaction of Cavalier Metal with the legal representation provided by these attorneys in the action against Johnson Controls and Dewayne's. On May 10, 2000, during the discovery process, attorneys McBroom and Sobel advised Cavalier that it would be strategically advantageous to dismiss Dewayne's from the suit because Dewayne's could be a helpful ally in the suit against Johnson Controls. McBroom and Sobel, although against Appellants' wishes, did in fact file a motion to voluntarily dismiss Dewayne's pursuant to Rule 41, and the trial court entered an order of dismissal on June 8, 2000.

Shortly after the court entered the order dismissing Dewayne's, Cavalier president Michael Stiles informed Mr. McBroom that he was unhappy with the nonsuit of Dewayne's. In two letters to Mr. McBroom, Stiles indicated he was concerned that the dismissal of Dewayne's would affect

---

[2] The facts in the underlying dispute between Cavalier, Johnson Controls, and Dewayne's are explained in detail in our opinion in *Cavalier Metal Corp. v. Johnson Metal Controls*, **124 S.W.3d 122 (Tenn. Ct. App.,2003)**.

Cavalier's ability to recover punitive damages. After receiving these letters, in July 2000 Mr. McBroom filed an amended complaint against Johnson Controls seeking tort and punitive damages. The trial judge allowed the amended complaint to include tort and punitive damages.

In light of the amended complaint, Johnson Controls sought additional discovery by serving interrogatories and requests for production on Cavalier on August 2, 2000 and the trial court granted a motion to compel Cavalier to produce discovery. Prior to trial, the trial court struck Cavalier's claim for punitive damages as not a case appropriate for punitive damages and because Cavalier Metal's interrogatory responses were lacking.

The case went to trial on September 19, 2000, and the trial lasted three weeks. The jury returned a verdict for Cavalier in the amount of $2,029,284.00 against the Defendant, Johnson Controls, which was appealed. Cavalier did not appeal the judgment. The judgment was reversed by the Court of Appeals for juror misconduct/bias and was remanded to the trial court. Appellants refiled against Dewayne's and ultimately settled with Dewayne's.

After voluntarily nonsuiting their first legal malpractice case, the Appellants filed the current legal malpractice action against Finch & McBroom, James McBroom, and Clifton Sobel on October 17, 2002, asserting (1) that Appellees should not have dismissed Dewayne's and (2) that Appellees caused the punitive damage claim against Johnson Controls to be dismissed.

Appellees asserted various defenses, including a statute of limitations defense, and denied the allegations against them. Appellees filed a motion to dismiss on several grounds.

The trial court dismissed the legal malpractice suit against Appellees, stating that the Appellants did not file suit within the one-year statute of limitations for attorney malpractice claims. The court further found that even if the suit was timely filed, there was no injury to Appellants.

### III. ISSUES

Appellants present the following issues on appeal:

I.      Whether the trial court erred in dismissing the Appellants' claims based on the statute of limitations.

II.     Whether the trial court erred in holding that the Appellants had not suffered any harm, or that such harm was speculative, following Appellees' wrongful non-suit of their claim against Dewayne's because the Appellants refiled their lawsuit against Dewayne's and subsequently settled.

III.    Whether the trial court erred in considering any issues of "lack of claim" due to no damages when that basis for relief was never part of the motion for judgment on the pleadings.

IV.     Whether the trial court erred in granting the Appellees' motion to dismiss the Appellants' claims against Appellees for mishandling the punitive damages claims in the trial against Johnson Controls, Inc.

V.      Whether the trial court erred by failing to grant Appellants' motion to amend.

## IV. STANDARD OF REVIEW

Our standard of review in this non-jury case is *de novo* upon the record of the proceedings below and there is no presumption of correctness with respect to the trial court's conclusions of law. ***Campbell v. Florida Steel Corp.*, 919 S.W.2d 26 (Tenn.1996)** and Tenn. R.App. P. 13(d). The trial court's factual findings are, however, presumed to be correct and we must affirm such findings absent evidence preponderating to the contrary. ***Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87 (Tenn.1993).**

## V. ANALYSIS

### I.      Whether the trial court erred in dismissing the Appellants' claims based on the statute of limitations.

Cavalier Metals first contends that the trial court erred in dismissing its claims against Finch & McBroom based on the one-year statute of limitations for attorney malpractice actions. On this question, Cavalier's argument is threefold. First, Cavalier argues that the trial court erred in concluding that any actual damage to Cavalier, resulting from the nonsuiting of Dewayne's, must have occurred on June 8, 2000, when the trial court entered the order nonsuiting Dewayne's. Second, Cavalier argues that the trial court should have found that the "discovery rule" tolled the running of the statute of limitations until Cavalier had actual notice of damages from Finch & McBroom's alleged malpractice, sometime after September 19, 2000. Third, Cavalier argues that the trial court erred in failing to find that due to fraudulent misrepresentations by Finch & McBroom, Finch & McBroom are barred from asserting a statute of limitations defense to Cavalier's attorney malpractice action. We will address each of these arguments separately.

#### A.      Did the trial court err in concluding that any actual damage to Cavalier must have occurred on May 10, 2000, when Dewayne's was nonsuited?

On May 10, 2000, Finch & McBroom filed a motion, pursuant to Rule 41 of the Tennessee Rules of Civil Procedure, to dismiss Dewayne's Quality Metal Coating Co. from the lawsuit giving rise to the attorney malpractice action. The trial court entered an order of dismissal on June 8, 2000. Cavalier asserts that the dismissal of Dewayne's did not in itself constitute actual damages; rather, Cavalier insists that it incurred damages only when "they lost their advantage against Dewaynes upon the start of the JCI trial, hired an attorney to further assist with the Dewayne's matter or incurred additional expenses as a result of Defendants' malpractice after the JCI trial." Cavalier also asserts in its appeal brief that it

could not have damages from Dewayne's absence from the case—without the hope of tort and punitive damages—until the Court struck the amended complaint containing such claims, and Defendants advised Plaintiffs that the court had stricken the amended complaint. That did not occur until after the trial began on September 19, 2000, well within the one year statute of limitations.

Finch & McBroom contend that if Cavalier did suffer harm from the nonsuit of Dewayne's, that such harm occurred at the time that Dewayne's was nonsuited, not at the conclusion of the litigation against JCI.

Neither party directs us to a case that is directly on point concerning this issue. In resolving this question, we are guided by our reasoning in two earlier cases, ***Memphis Aero Corp. v. Swain*, 732 S.W.2d 608 (Tenn. Ct. App. 1986)**, and ***Denley v. Smith*, 1989 WL 738 (Tenn. Ct. App. 1989)**. In *Memphis Aero Corp.*, the appellant was an attorney, William Swain, who had allegedly mishandled a debt collection for his client, Memphis Aero, with the result that a judgment in the amount of $23,809.51 was entered against Memphis Aero. However, the trial court initially dismissed the action against Memphis Aero, and the judgment was entered after the Court of Appeals reversed the trial court and remanded the case for a determination of damages. After the judgment was entered against it, Memphis Aero sued Swain for malpractice, and the trial court awarded Memphis Aero a judgment in the amount of $39,971.95. On appeal, Swain contended that the malpractice action was not timely filed; he argued that the cause of action accrued, at the latest, on the date in 1978 when an attorney for Memphis Aero wrote a letter to Swain asking him to take care of the problems caused by his mishandling the debt collection without cost to Memphis Aero. Memphis Aero contended that the cause of action accrued only on the date in 1982 when the Court of Appeals reversed and remanded the suit against Memphis Aero, several years after the letter that Mr. Swain believed marked the accrual of the cause of action for attorney malpractice. We agreed with Mr. Swain. As we stated in our opinion:

> It is clear that in 1978 Memphis Aero knew that Mr. Swain was negligent and knew that Swain's negligence had resulted in damage to Memphis Aero. Our Supreme Court has specifically held that a plaintiff cannot be permitted to wait until he knows all of the injurious effects or consequences of an actionable wrong to delay the accrual of a cause of action. *Security Bank & Trust Co. v. Fabricating, Inc.*, 673 S.W.2d 860 (Tenn. 1983).

We held that the attorney malpractice action against Mr. Swain was untimely filed.

In *Denley v. Smith*, we held that the attorney malpractice suit by the appellant, Robert Denley, against his former attorney was not timely filed. Mr. Denley alleged that his attorney had negligently failed to inform him of his reparation rights for an alleged breach of a commodities agreement by the defendant in the underlying lawsuit. We held that Mr. Denley's action was untimely filed because he failed to bring the action within one year of becoming aware of damages due to his attorney's

negligence. We explained the policy underpinnings of Tennessee's law on the accrual of causes of action as follows:

> We emphasize that the extent of damages has nothing to do with accruing of a cause of action. The purpose in limitation of actions is to protect the defendant from having to defend stale claims. Without statutes of limitation, a plaintiff could collect evidence while the incident underlying the cause was fresh and wait to file suit until passage of time made it difficult or impossible for the defendant to do the same. The opportunity for the defendant to collect good evidence would pass before he was aware he needed to do so. The historical and enduring universality of statutes of limitation in Anglo-American law makes it clear that this is a desirable policy for our legal system, even though occasional potentially valid claims will be barred.

> In some states, the action accrues when the act giving rise to the cause occurs. Others, like Tennessee, wait until the damages have been discovered. In attorney malpractice actions in Tennessee, it does not matter that all damages are not known. When any damages are known, the statute begins to run. Even though Denley's actual damages at the time may have been no greater than the cost of filing a reparation claim, and even though the damages may have eventually reached thousands as Denley alleged, the action accrued when any damages, no matter how small, became apparent.

***Denley v. Smith*, 1989 WL 738 (Tenn. Ct. App. 1989), \*3-4** (internal citations omitted).

We conclude that, in light of the Tennessee law explained in *Memphis Aero Corp. v. Swain* and *Denley v. Smith,* Cavalier must be deemed to have suffered actual damage on June 8, 2000, when the trial court entered an order nonsuiting Dewayne's was entered. It is this failure of Finch & McBroom to bring an action against Dewayne's that forms the heart of Cavalier's attorney malpractice action, and it is this failure that caused Cavalier's filing of another action against Dewayne's. We conclude that the evidence preponderates in favor of a finding that the date the nonsuit against Dewayne's was entered is the date on which damages were first incurred. The trial court did not err on this question.

We further note that even if the damages were not incurred on May 10, 2000, they were unquestionably sustained on July 13, 2000, when James McBroom and Clifton Sobel filed an amended complaint against Johnson Controls that failed to carry out the explicit instructions of Michael Stiles, the president of Cavalier. As we will discuss, *infra*, they filed the amended complaint after receiving a letter from Michael Stiles in which he expressed his dismay at their nonsuit of Dewayne's and demanded "immediate action" in "bringing Dewayne's back into the case." As we will discuss, *infra*, Mr. Stiles's letters demonstrate that he was fully aware, in June 2000, of the implications of the dismissal of Dewayne's, that he was deeply involved in formulating the legal strategy for the litigation, and that therefore Cavalier cannot be deemed to have discovered the damages from the attorneys' alleged malpractice only later.

**B.      Did the "discovery rule" toll the running of the one-year statute of limitations for attorney malpractice actions?**

The second argument by Cavalier is that, even if it were determined to have sustained actual damages due to the nonsuit of Dewayne's in May or June of 2000, the running of the statute of limitations was tolled by the discovery rule for attorney malpractice actions. The discovery rule was set out as a two-prong test by the Tennessee Supreme Court in the case of *Carvell v. Bottoms*, 900 S.W.2d 23, 28 (Tenn. 1995):

> [T]he "legal malpractice discovery rule" is composed of two distinct elements: (1) the plaintiff must suffer ... an "irremediable injury" as a result of the defendant's negligence; and (2) the plaintiff must have known or in the exercise of reasonable diligence should have known that this injury was caused by defendant's negligence.

We concluded (as we explain in Part A of this section, *supra*) that Cavalier did suffer an irremediable injury on May 10, 2000. The question we must resolve, then, is when Cavalier knew or should have known that an injury was caused by their attorneys' alleged negligence.

Cavalier claims that due to the misrepresentations made to them by their attorneys, the Appellees, they did not discover their damages until after the trial of the action against Johnson Controls. Cavalier states in its appeal brief:

> The facts of this case and inferences therefrom do not support Defendants' allegation that Plaintiffs should have known that they sustained damages from their attorneys' malpractice on the day the non-suit was filed. Plaintiffs were never told by their attorneys that malpractice had been committed and that they should seek other counsel. Plaintiffs were not aware of any damages from their attorneys' malpractice until after the trial and numerous misrepresentations by the malpracticing attorneys were given to make sure that the Plaintiffs did not feel that such damage occurred. Accordingly, Plaintiffs did not have ***actual*** notice of damages from Defendants' malpractice until some time after September 19, 2000.
>
> Plaintiffs similarly did not have ***constructive*** notice of damages from their attorneys' malpractice upon the filing of the nonsuit. To establish constructive notice, Defendants must prove that, upon being told of the non-suit, Plaintiffs should have known that they suffered an [irremediable] injury as a result of Defendants' negligence.

(Emphasis in the original.) We conclude that Cavalier knew, or should have known, about their attorneys' allegedly negligent act by June 13, 2000, when Michael Stiles wrote the first of two letters in which he called into question the voluntary dismissal of Dewayne's from the lawsuit. These letters reveal that Mr. Stiles was closely directing the legal strategy against JCI and Dewayne's and was fully aware of the actions his attorneys had taken up until that point. It will be helpful to reproduce the June 13 letter in its entirety:

-7-

Dear Jim,

I don't know exactly where to begin, but I do know one very important thing which is a huge issue — money. It was brought to our attention at mediation that because of our release of DeWaynes [*sic*], that punatiive [*sic*] damages could no longer be sought under Tennessee Breach of Contract Law. Is that true? If that is true we must immediately bring DeWaynes [*sic*] back into the case. In light of the fact that I will not assume that you were "out foxed" by Alexis — there must be a plan B for punative [*sic*] or tort issues. I personally had never assumed that JCI's punative [*sic*] position was based on DeWaynes seeking "intentional interference" with our contract and JCI going along. JCI's punative [*sic*] position revolves around item #44 in the complaint, in laymens [*sic*] terms, JCI killed Cavalier because of what they learned regarding stress relieving. This fact is the issue in our demise at their evil hands.

I am requesting that you advise me immediately regarding this profound issue.

Thanks,

Mike Stiles

Three days later, Mr. Stiles sent Mr. McBroom a longer letter expressing misgivings about Mr. McBroom's representation and giving detailed instructions on the legal strategy he wanted pursued in the case. He explicitly directed Mr. McBroom to take "immediate action" by "bringing Dewayne's back into the case," warning Mr. McBroom not to "sluff this off." In the same letter, Mr. Stiles also pointed out that Mr. McBroom's representation has so far been "less than vigorous." The letter reads in its entirety as follows:

Dear Jim:

[W]e have other critical parts of our complaint to pursue at this moment.

1.      Compensatory damages; already developed by the numbers delivered Tuesday a.m.

2.      Punative [*sic*] damages; which we must protect this position at all costs and provide compelling evidence that JCI made an internal strategy to remove Cavalier for their own protection.

Item #1 of this paragraph is a given — some debate can occur and will occur over the numbers but it is a large number. Item #2 of this paragraph is made more complex and requires immediate action. I propose the following and the reasons I can logically conclude:

a. All the stops be pulled to guarantee that Cavalier retain it's [*sic*] position on punitive damages i.e.: amending the complaint, using item #44, bringing DeWaynes [*sic*] back into the case, using the Consumer Protection Act in our complaint just ruled on by the Tenn. Supreme Court which allows for treble damages and lawyer fees. You have the courts [*sic*] ruling and I am enclosing the summary — do not sluff this off — give me your written opinion on this pleading.

b. Mr. Greslik, Corporate QC Director, stated and accused Cavalier of not providing the stress relieving service to the detriment of JCI who had every reason to assume this service was being provided by Cavalier. That was obviously a lie and was stated so as to threaten Cavalier with it's [*sic*] neglect and cover JCI's ass. This meeting represents their position. It was all a fraud! They never had, did not intend to pay us nor are they paying for these services today.

The question of Cavalier's damages based on the question of why would JCI have wanted to kill Cavalier can be answered very dramatically — We are certainly proposing that this occurred based on events of word and deed of which there is documents and testimony to support their intent to kill Cavalier. But more importantly, what was the motive to kill us? We believe for a future scapegoat and to get us out of their face in this matter. In what way and only way can we demonstrate the magnitude of this motive? When a jury is presented with the position that the automotive people and NHTSA would and will take action against JCI, that will dramatize beyond any question what JCI was facing in continuing to cover up this neglect — loss of business, reputation, potential re-call expense, etc, etc. In order to provide the fatal blow we must take immediate action in one or all of the following ways.

1. Issue a certified letter to GM, Chrysler, Ford and Nissan, and the NHTSA expressing your client followed it's [*sic*] fiduciary responsibility and suffered dearly for it and we will provide and document or statement which they find necessary re: any actions which they "may" wish to pursue.

2. Summon GM, Ford, Chrysler, and Nissan and NHTSA personnel i.e. metallurgical safety manager and Ms. Rebecca McPherson, NHTSA for testimony at trial. These people would not be our people, or their people but only those that may be able to speak authoritatively to the purpose of the specifications and the potential of not providing them.

3. Call Ms. Powell to deposition and issue a summons for her testimony at trial. Do not let them off the hook by admitting non compliance "but where are your damages?" Ms. Powell can speak to all of the potentials of disregarding

this spec under cross examination and allow us to get to the real magnitude of their sins out of their own mouths.

Your thoughts will be considered, of course, but we must take the offense and we will.

I have privately retained an expert automotive metallurgist. Your efforts have been less than vigorous in this matter and I know we must at least prepare to ask the right questions.

It would appear that you must file a motion to compel regarding answers to interrogatories from 1996 and restated a month ago – please do so.

For the record, the Board of Directors of Cavalier Metal Corp. met Thursday, June 15, 2000, at 8:00 pm and a corporate resolution was passed that provides that Michael Stiles – President, have complete and total authority in this matter. Please conduct your affairs of this case accordingly.

Mike

Based on these letters, we conclude that Cavalier knew, or should have known, by July 13, 2000, at the very latest, of the damages caused by the negligence of Mr. McBroom, Mr. Sobel, and Finch & McBroom. In view of the "complete and total authority" that Mr. Stiles held in the formulation of the legal strategy and in managing the litigation against Johnson Controls and Dewayne's, and also considering the doubts he expressed in these letters about the vigor and wisdom of the legal representation provided by McBroom and Sobel, it is clear that he should have been aware of three critical facts: first, the fact that McBroom and Sobel filed an amended complaint against Johnson Controls; second, the fact that the amended complaint disregarded Mr. Stiles' explicit instruction to bring Dewayne's back into the case; and three, the possible consequences of this failure to bring Dewayne's back into the case. Based on our review of the record, we conclude that the evidence preponderates in favor of a finding that the statute of limitations began to run, at the latest, on July 13, 2000; therefore, the trial court did not err in finding that Appellants' claim was barred by the statute of limitations for attorney malpractice actions.

C.      **Did the trial court err in failing to find that Finch & McBroom engaged in fraudulent concealment that bars them from relying on the statute of limitations defense?**

Cavalier contends that the Appellees fraudulently concealed their actions from Cavalier, such that Appellees should not be permitted to rely, as a defense, on the statute of limitations for attorney malpractice. Under Tennessee law, fraudulent concealment of a cause of action by defendant works to toll the statute of limitations until such time as the plaintiff, through the exercise of reasonable

diligence, could have discovered the cause of action. As the Tennessee Supreme Court explained in the case of *Vance v. Schulder*, **547 S.W.2d 927, 930 (1977)**:

> Mere ignorance and failure of the plaintiff to discover the existence of a cause of action is not sufficient to toll the running of the statute of limitations. There is an exception to this rule. Fraudulent concealment of the cause of action by the defendant tolls the statute of limitations. It begins to run as of the time of the discovery of the fraud by the plaintiff. To come within this exception, the plaintiff must prove that the defendant took affirmative action to conceal his cause of action and that he, the plaintiff, could not have discovered his cause of action despite exercising reasonable diligence.

Cavalier argues that the actions of Appellees constituted fraudulent concealment. In its appeal brief, Cavalier argues:

> The Defendants did not simply paint a "rosy picture" concerning their misconduct, but instead took affirmative steps to hide their wrongdoing. They expressly misrepresented that they had the authority to dismiss Dewayne's despite any client wishes; misrepresented that Dewayne's would be an ally with the dismissal; misrepresented that Dewayne's would help them at trial now that they were dismissed; misrepresented that the Plaintiffs were better off without Dewayne's in the case; and misrepresented that Plaintiffs would recover tort and punitive damages against JCI that would exceed what could have been recovered against Dewayne's. The Defendants should never be permitted to benefit from such misconduct, and such defenses should be repelled from the courthouse.

We note that neither Cavalier's original complaint in this attorney malpractice action, nor its amended complaint, alleges that Appellees "misrepresented that they had the authority to dismiss Dewayne's despite any client wishes." This statement appears for the first time in its brief on appeal. Even if such statements were to constitute fraudulent concealment, we cannot overturn the trial court's judgment based on an assertion that appears, for the first time, in an appeal brief. Moreover, the rest of the assertions allegedly made by Appellees (to the effect that Appellants would be better off without Dewayne's in the case, and that tort and punitive damages could be recovered against JCI that were in excess of what could be recovered against Dewayne's), even if they were made, would not rise to the level of fraudulent concealment. These statements all reflect, at most, the attorneys' explanation of their litigation strategy and could not reasonably be interpreted as warranties that the strategies would be successful. Furthermore, such statements were made *prior* to the trial court's dismissal of Cavalier's tort and punitive claims against JCI; since the outcome of which plaintiffs complain had not occurred at the time the statements were made, it is highly questionable whether such statements could be considered "concealment" of a cause of action. For this reason, we conclude that the trial court did not err in failing to hold that the Appellees had engaged in fraudulent concealment such that they were deprived of the statute of limitations defense.

Accordingly, the trial court's order dismissing the action is affirmed. The alternative issues presented by appellant are pretermitted. Costs of the appeal are assessed against the Appellants, Cavalier Metal Corporation and Judith A. White, and their sureties.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.